FILED

# IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, MISSISSIPPI

2016 MAR -3 PM 3: 44

**ESTATE OF MICHAEL V. POWERS, DECEASED**                    **PLAINTIFF**

**VS**                    CIVIL ACTION NUMBER: _16CV028(W)_

CIRCUIT CLERK

**UNITED HEALTHCARE OF MISSISSIPPI, INC.,**
**UNITED HEALTHCARE SPECIALTY BENEFITS and**
**XYZ CORPORATIONS 1-10**                    **DEFENDANTS**

---

## COMPLAINT

---

Comes now, plaintiff, the Estate of Michael V. Powers, by F.W. Mitts, III, Executor, and for

Complaint for breach of contract for denial of benefits would show unto the Court as follows:

**1.**

Plaintiff is the Estate of Michael V. Powers, deceased, who was a resident of Lauderdale

County, Mississippi at the times of the occurrence which is the subject of this Complaint, F.W.

Mitts, III is the duly appointed Executor of the Estate of Michael V. Powers and has been authorized

by Order of the Chancery Court of Lauderdale County, Mississippi in civil action no. 13-394(M) to

prosecute this cause of action stated in this Complaint.

Defendant, United Healthcare of Mississippi, Inc., is a Mississippi corporation upon whom

process may be served by service upon its registered agent for service of process, CT Corporation

System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

Defendant, United Healthcare Specialty Benefits, LLC is a limited liability company

organized under the laws of the state of Maine upon whom process may be served by service upon

its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood,

Mississippi 39322.

Defendants, XYZ Corporations 1-10, are fictitious and unknown parties who may be the



I CERTIFY THIS IS A TRUE AND CORRECT
... THE DOCUMENT/S FILED IN THIS
OFFICE  DATE 3/22/16
... LL JOHNSON, CIRCUIT CLERK
D.C.

EXHIBIT
1

proper corporate entities that issued the uninsured motorist policy to the plaintiff for which claim is made in this action. The identity of these parties are unknown at this time and can only be ascertained through the use of discovery. Upon learning the identity of this party or parties, the plaintiff may substitute it for the fictitious parties under Rule 9(h) of the Mississippi Rules of Civil Procedure. Alternatively, in the event plaintiff has sued the wrong party and is required to change parties, such amendment will be made in accordance with Rule 15(c) of the Mississippi Rules of Civil Procedure.

**2.**

The decedent, Michael V. Powers, was an employee of Peavey Electronics in Meridian, Lauderdale County, Mississippi on March 6, 2013 when he sustained an accidental injury to his right eye which resulted in disfigurement and the loss of sight in one eye.

**3.**

Michael V. Powers subsequently died as a result of a cardio pulmonary arrest and probable acute myocardial infarction on April 29, 2013 and the plaintiff herein was appointed as the Executor of the decedent's estate by Judgment entered by the Lauderdale County Chancery Court in Civil Action Number 13-394(M) dated May 1, 2013.

**4.**

At all relevant times, decedent was a Covered Person as defined by that certain policy of insurance numbered█0483 issued by United Healthcare Insurance Company to Peavey Electronics Corporation. A true and correct copy of such policy is attached hereto as **EXHIBIT "1"**.

**5.**

The aforesaid policy of insurance provided Accidental Death And Dismemberment benefits to Covered Persons which provided 50% of the amount of insurance shown in its Schedule of

Benefits for the "loss of sight of one eye". The Schedule of Benefits provided a Basic Accidental Death And Dismemberment Benefit of $25,000.

**6.**

The Executor, on behalf of the decedent, properly made a claim for benefits pursuant to policy number 0483 issued by United Healthcare Insurance Company to Peavey Electronics Corporation.

**7.**

The claim presented to United Healthcare through United Healthcare Specialty Benefits was denied. The Executor exhausted all administrative appeals processes and now brings this action for denial of benefits.

**8.**

The decedent's estate is entitled to recover 50% of the amount of insurance shown on the schedule of benefits for the loss of sight of one eye under the policy's Accident Death And Dismemberment Benefits, Covered Person's provisions. The decedent's estate has been denied that benefit.

**9.**

Plaintiff demands trial by jury.

**PREMISES CONSIDERED**, plaintiff moves that Summons be issued for United Healthcare of Mississippi, Inc. and United Healthcare Specialty Benefits, Inc. and that the Court hear plaintiff's cause of action and issue a Judgment in the amount of $12,500 against defendants pursuant to the Accidental Death And Dismemberment Benefits provisions of the policy of insurance and, further, that plaintiff receive a judgment against defendants for all costs of this action, including attorney's fees, pursuant to 29 U.S.C. §1132(a)(1)(B) [ERISA §502(a)(1)(b)].

This the 3rd day of March, 2016.

Respectfully submitted,

**ESTATE OF MICHAEL V. POWERS, DECEASED**

**F.W. MITTS, III, EXECUTOR, MSB #3389**
Martin, Rogers & Mitts
P.O. Box 5247
Meridian, MS 39302
Telephone: 601-693-6516
Facsimile: 601-483-3615
Email: bmitts01@bellsouth.net

Prepared by:

Grace W. Mitts          MSB #3390
Witherspoon  & Compton, LLC
P.O. Box 845
Meridian, MS 39302
Telephone: 601-693-6466
Facsimile: 601-693-4840
Email: gmitts@witherspooncompton.com

OF COUNSEL FOR PLAINTIFF

O:\GJCFILES\GWM\15922\Claim against UHC\Complaint.wpd

   

### United HealthCare Insurance Company
### 450 Columbus Boulevard
### Hartford, Connecticut
### (Home Office)

Policyholder: Peavey Electronics Corporation

Effective Date of Policyholder: July 1, 2005

Policy Number: ███0483

Covered Person: As on file with the Administrator

Certificate Number: As on file with the Administrator

Certificate Effective Date: As on file with the Administrator

Beneficiary: As on file with the Administrator

We, United HealthCare Insurance Company, issue this Certificate to the Covered Person as evidence of insurance under the Policy We issued to the Policyholder shown above. This Certificate describes the benefits and other important provisions of the Policy. Please read it carefully.

The Policy may be amended, changed, cancelled or discontinued without the consent of the Covered Person or the Covered Person's beneficiary.

The benefits described in this Certificate insure the Covered Person eligible for insurance.

**Read the Group Certificate Carefully**

**Please Note: The Life Insurance Death Benefit will be reduced If you receive an accelerated benefit.**

This is a legal contract between the Policyholder and Us. If the Policyholder has any questions or problems with the Policy, We will be ready to help the Policyholder. The Policyholder may call upon his agent or Our Home Office for assistance at any time.

If the Policyholder, or the Covered Person have questions, need information about their insurance, or need assistance in resolving complaints, call 1-866-615-8727.

It is signed at the Home Office of United HealthCare Insurance Company as of the Effective Date shown above.

Secretary

President

Group Life, Accidental Death and
Dismemberment Insurance Policy
Non-Participating

Administrative Office:
9900 Bren Road East
Minnetonka, MN 55343

**EXHIBIT "1"**
**Page 1 of 20**

 

## SCHEDULE OF BENEFITS

### Class of Employees

This schedule covers the following class(es) of Employees of companies and affiliates controlled by the Policyholder:

All other full-time Employees, excluding Executives, temporary and seasonal employees

### Description of Class:

Employees are considered full-time if they customarily work:          30 hours per week

### Employee Waiting Period:

An Employee is eligible for insurance the first day of the month following the date he completes 90 days of continuous employment with the Policyholder.

### Covered Person Insurance:

### Basic Life Insurance Benefit:

$25,000

Basic Life Insurance Benefit will reduce to 65% at age 65, 50% at age 70 and terminate at retirement.

### Supplemental Life Insurance Benefit:

The benefit amount applicable to the Covered Person is that which is elected at the time of enrollment.

$10,000 to $250,000 in increments of $10,000, but cannot exceed 5 times basic Annual Earnings

**Annual Earnings Definition:** The Annual Earnings received from the Covered Person's employer for the year ending immediately prior to the Policy Anniversary period. Annual Earnings do not include commissions, bonuses, overtime pay and other extra compensation. Annual Earnings will be rounded to the next higher thousand.

Supplemental Life Insurance Benefit will reduce to 65% at age 65, 50% at age 70 and terminate at retirement.

### Basic Accidental Death and Dismemberment Benefit:

$25,000

Basic Accidental Death and Dismemberment Benefit will reduce to 65% at age 65, 50% at age 70 and 75% at age 80

Basic Accidental Death and Dismemberment Benefits are issued on an

☒ occupational (24 hour) basis   ☐ non-occupation al basis

**Accelerated Death Benefit:** Up to 50% of the combined Basic Life Insurance and Supplemental Life Insurance in force to a maximum $50,000. Employee must have at least $10,000 in Life Insurance in-force to qualify for this benefit.

### Evidence of Insurability Requirements:

Evidence of insurability will be required:

1. for any amount of Employee Supplemental Life Insurance in excess of the lesser of 3 times basic Annual Earnings or $50,000.
2. for any elected increase in the amount of Employee Supplemental Life Insurance.

 

## GENERAL DEFINITIONS

The male pronoun. whenever used in the Policy, includes the female.

**Active Work or Actively at Work:** The Covered Person reports for work at his usual place of employment or any other business location where he is required to travel and is able to perform the material and substantial duties of his regular occupation for the entire normal workday. The Covered Person must be working at least the minimum number of hours per week in an Eligible Class, as shown in the Schedule of Benefits.

Unless Disabled on the prior workday or on the day of absence. a Covered Person will be considered Actively at Work on the following days:

1.  a Saturday, Sunday or holiday which is not a scheduled workday;

2.  a paid vacation day. or other scheduled or unscheduled non-workday; or

3.  an excused or emergency leave of absence (except medical leave.)

**Contributory or Non-Contributory Insurance:** Contributory Insurance is insurance for which the Covered Person must apply and agree to make the required premium contributions. Non-Contributory Insurance is insurance for which the Covered Person does not have to make any premium contributions.

**Covered Person:** The Employee insured under the Policy. References to "Covered Person," "Covered Persons" and "Covered Person's" throughout this Certificate are references to a Covered Person.

**Dependent:** Includes

1.  a legal Spouse: and

2.  any unmarried Child.

A Child is:
    1.  an Eligible Student;
        a.  who is not married;
        b.  who is not in the armed forces of any country;
        c.  who is not insured under the Policy as a Covered Person;
        d.  who is less than 25 years of age,
        e.  who attends an accredited post-secondary school (other than a correspondence school) on a full-time basis as defined by the post-secondary school; and
        f.  is enrolled in the next scheduled term.

        or

    2.  physically or mentally Disabled.

        The term "Child" includes a natural child, legally adopted child, stepchild, foster child, or any child who lives with the Covered Person in a regular parent-child relationship, provided the Covered Person claims such Child as a Dependent on the Covered Person's most recent federal income tax return.

**Employee:** A person who is:

1.  directly employed in the normal business of the Policyholder; and

2.  paid for services by the Policyholder; and

3.  Actively at Work for the Policyholder, or any subsidiary or affiliate insured under the Policy.

No director or officer of the Policyholder will be considered an Employee unless he meets the above conditions.

**EXHIBIT "1"$^{\text{GD}}$**
**Page 3 of 20**

3

 

## GENERAL DEFINITIONS (continued)

**Hospital or Medical Facility:** A legally operated, accredited facility licensed to provide full-time care and Treatment for the condition for which benefits are payable under the Policy. It is operated by a full-time staff of licensed physicians and registered nurses. It does not include facilities that primarily provide custodial, education or rehabilitative care, or long-term institutional care on a residential basis.

**Injury:** A bodily Injury resulting directly from an accident and independently of all other causes.

**Physician:** A practitioner of the healing arts who is:
1. duly licensed in the state in which the Treatment is received; and
2. practicing within the scope of that license.

The term Physician does not include the Covered Person, the Covered Person's spouse, children, parents, parents-in-law, or siblings.

**Regular Care:** The Covered Person personally visits a Physician as often as is medically required to effectively manage and treat his disabling condition(s), according to generally accepted medical standards. The Covered Person is receiving appropriate Treatment and care, according to generally accepted medical standards, by a Physician whose specialty or experience is appropriate for the disabling condition(s).

**Sickness:** An illness. disease. pregnancy or complication of pregnancy.

**Treatment:** consultation, advice. tests, attendance or observation, supplies or equipment. including the prescription or use of prescription drugs or medicines.

**We, Our and Us:** United HealthCare Insurance Company.

EXHIBIT "℗
Page 4 of 20

4

 

## CERTIFICATE GENERAL PROVISIONS

**Discretionary authority:** When making a benefit determination under the Policy, We have discretionary authority to determine the Covered Person's or Dependent's eligibility, if applicable, for benefits and to interpret the terms and provisions of the Policy. This provision applies, however, only where the interpretation of the Policy is governed by the Employee Retirement Income Security Act (ERISA).

**Fraud:** We will focus on all means necessary to support fraud detection, investigation, and prosecution. It may be a crime if the Covered Person or the employer knowingly, and with intent to injure, defraud or deceive Us, files a claim containing any false, incomplete, or misleading information. These actions, as well as submission of false information, will result in denial of the Covered Person's claim, and are subject to prosecution and punishment to the full extent under state and/or federal law. We will pursue all appropriate legal remedies in the event of insurance fraud.

**Incontestability :** We may not contest the validity of the Policy, except for the non-payment of premiums or fraudulent misrepresentations, after it has been in force for two years from its date of issue. No statement made by any Covered Person relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such person's lifetime, nor unless it is contained in a written instrument signed by him. This clause will not affect Our right to contest claims made for accidental death or accidental dismemberment benefits.

**Information To Be Furnished:** The Policyholder may be required to furnish any information needed to administer the Policy. Clerical error by the Policyholder will not:

1.  affect the amount of insurance which would otherwise be in effect; or
2.  continue insurance which otherwise would be terminated; or
3.  result in the payment of benefits not otherwise payable.

Once an error is discovered, an equitable adjustment in premium will be made. If the premium adjustment involves the return of unearned premium, the amount of the return will be limited to the 12-month period, which precedes the date We receive proof such an adjustment should be made. We may inspect any of the Policyholder's records which relate to the Policy.

**Misstatement Of Age:** If a Covered Person's age has been misstated, premiums will be subject to an equitable adjustment. If the amount of the benefit depends upon age, then the benefit will be that which would have been payable, based upon the person's correct age.

**Payment of Premiums:** No insurance provided by the Policy will be in effect until the first premium for such insurance is paid. For insurance to remain in effect, each subsequent premium must be paid on or before its due date. The Policyholder is responsible for paying all premiums as they become due. Premiums are payable on or before their due dates at Our Home Office. A Grace Period of 31 days from the Premium Due Date will be allowed for the payment of each premium after the first premium payment. During the Grace Period, the insurance will remain in effect provided the premium is paid before the end of the Grace Period. Payment of Premium for a period before it is due will not guarantee that the insurance will remain in effect for that period.

 

## CERTIFICATE GENERAL PROVISIONS (continued)

**Premium Rate Change:** We have the right to change premium rates as of any Premium Due Date but not more than once in any 12-month period. We will notify the Policyholder in writing at least 31 days prior to the change in rates.

The premium rate may change prior to this time however, for reasons that affect the insured risk, which include:

1. a change occurs in benefits;
2. a division, subsidiary, or affiliated company is added or deleted;
3. the number of Employees insured changes by 10% or more;
4. a new Law or a change in any existing Law is enacted which applies to the Policy.

A change may take effect on an earlier date if both the Policyholder and We agree to it. Except in the case of fraud, premium adjustments, refunds or charges will be made for only the current Policy year.

**Records:** The Policyholder must furnish all information required by Us to:

1. compute premiums; and
2. maintain necessary administrative records.

Records of the Policyholder, which have a bearing on insurance, will be available for inspection by Us at any reasonable time.

**Workers' Compensation:** The Policy is not to be construed to provide benefits required by Workers' Compensation laws.

 

## COVERED PERSON ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

**Covered Person's Eligibility:** Employees who work on a full-time basis for a Policyholder are eligible for insurance after completion of the required Employee Waiting Period, provided they are in a class of Employees who are included. Employees will be considered to work on a full-time basis if they customarily work at least the number of hours per week shown in the Schedule of Benefits.

An Employee will become eligible for insurance on the latest of the following dates:

1. the Effective Date of the Policy;

2. the end of the Employee Waiting Period shown in the Schedule of Benefits;

3. the date the Policy is changed to include the Employee's class; or

4. the date the Employee enters a class eligible for insurance.

**Effective Date of Covered Person Insurance:** If an Employee is not Actively at Work on the date his insurance is scheduled to take effect, it will take effect on the day after the date he returns to Active Work. If the Employee's insurance is scheduled to take effect on a non-working day, his Active Work status will be based on the last working day before the scheduled Effective Date of his insurance.

An Employee must use forms provided by Us when applying for insurance.

The Employee's insurance will be effective at 12:01 A.M. Eastern Standard time as follows:

1. if it is Non-contributory, on the date the Employee becomes eligible for insurance, regardless of when he applies, or

2. if it is Contributory, and the Employee makes application within 31 days after the date he first became eligible, on the later of:

   a. the date the Employee is eligible for insurance, regardless of when he applies; or

   b. the date the Employee's application is approved by Us if evidence of insurability is required.

Evidence of insurability is required if an Employee applying for Contributory Insurance:

1. does not apply for insurance within 31 days after the date he first became eligible; or

2. he has previously terminated his insurance while in an eligible class.

**Effective Date of Change in Amount of Insurance:** If there is an increase in the amount of the Covered Person's insurance, the increase will take effect on:

1. the policy anniversary date on or next following the date of the increase, if the Covered Person is Actively at Work on the date of increase;

2. the date the Covered Person returns to Active Work if the Covered Person is not Actively at Work on the policy anniversary date on or next following the date of the increase;

3. the policy anniversary date on or next following the date of the increase, if the policy anniversary date is a non-working day and the Covered Person was Actively at Work on his last scheduled working day before the non-working day;

4. the date of the increase if the Covered Person is on an approved layoff or leave of absence, for reasons other than a Sickness or Injury.

If evidence of insurability is required, the increase will take effect on the later of the dates indicated above or the date We approve his application.

A decrease in the amount of the Covered Person's insurance will take effect on the first day of the month on or next following the date of the decrease.

 

## COVERED PERSON ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS (continued)

**Family and Medical Leave of Absence:** If the Covered Person is on a Family or Medical Leave of Absence, his insurance will be governed by his employer's policy on Family and Medical Leaves of Absence.

We will continue the Covered Person's insurance if the cost of his insurance continues to be paid and his Leave of Absence is approved in advance and in writing by his employer.

The Covered Person's insurance will continue for up to the greater of:
1. the leave period required by the Federal Family and Medical Leave Act of 1993; or
2. the leave period required by applicable state law.

While the Covered Person is on a Family or Medical Leave of Absence, We will use earnings from his employer just prior to the date his Leave of Absence started to determine Our payments to him.

If the Covered Person's insurance does not continue during a Family or Medical Leave of Absence, then when he returns to Active Work:
1. he will not have to meet a new Employee Waiting Period including a Waiting Period for insurance of a Pre-Existing Condition, if applicable; and
2. he will not have to give Us evidence of insurability to reinstate the insurance he had in effect before his Leave of Absence began.

However, time spent on a Leave of Absence, without insurance, does not count toward satisfying his Employee Waiting Period.

**Termination of Covered Person Insurance:** The Covered Person's insurance will terminate at 12:00 midnight Eastern Standard time on the earliest of the following dates:

1. the last day of the period for which a premium payment is made, if the next payment is not made;

2. the date he ceases to be a member of a class eligible for insurance;

3. the date the Policy terminates, or a specific benefit terminates; or

4. the date he ceases to be Actively at Work.

   a. If active work ceases during an approved layoff, medical leave or non-medical leave of absence, the insurance will not continue more than 3 months from the date he stopped active work.

   b. If active work ceases due to a sickness or accidental injury, and the Covered Person is eligible for the Waiver of Premium provision in this Certificate, the Policyholder may continue the Covered Person's insurance for up to 12 months from the date he stopped active work.

5. the date he is no longer Actively at Work due to a labor dispute, including but limited to strike, work slow down or lock out.

 

## LIFE INSURANCE BENEFIT FOR COVERED PERSON

**Death Benefits:** We will pay the Covered Person's beneficiary the amount of insurance in force on the date of death when We receive satisfactory proof of a Covered Person's death. The benefit will be paid in accordance with the beneficiary section.

**Assignment:** Life insurance as provided by the Policy may be assigned as an absolute assignment only. In making an assignment, the Covered Person must transfer all his present and future ownership rights to the person to whom he assigned the insurance. This includes the right to change the beneficiary and to convert the insurance. The Covered Person may not make a collateral or partial assignment of his insurance.

**Beneficiary:** The Covered Person's beneficiary will be the person(s) he names in writing to receive any amount of insurance payable due to his death.

The Covered Person may name or change a beneficiary by giving Us written notice at Our Home Office on a form acceptable to Us. When We receive the notice, it will be effective on the date made, subject to any payment We may have made before We receive it.

If the Covered Person names more than one beneficiary, those who survive will share equally unless the Covered Person specifies otherwise. If there is no named beneficiary living at the Covered Person's death, We will pay any amount due to the estate or, at Our option, to his:

1. legal spouse;
2. natural or legally adopted children in equal shares; or
3. estate.

**Notice of Claim:** Written notice of a claim for death must be given to Us at Our Home Office by the Covered Person's beneficiary within 30 days of the date of death. If it is not possible, written notice must be given as soon as it is reasonably possible to do so.

The claim form is available from the Covered Person's employer, or can be requested from Us. If the form is not received from Us within 15 days of a request, written proof of claim should be sent to Us without waiting for the form. Written proof must show the cause of death. Also, a certified copy of the death certificate must be given to Us.

**Proof of Claim:** Written proof of claim must be filed within 90 days of the loss. However, if it is not possible to give proof within 90 days, it must be given no later than one year after the time proof is otherwise required, except in the absence of legal capacity.

**Payment of Claim:** Payment of Claim for loss of life will be paid in accordance with the beneficiary section. All other benefits under the Policy are paid to the Covered Person.

If the Covered Person has chosen an option, no one may change it unless the Covered Person consents in writing. The Covered Person's beneficiary may choose an option within 60 days after death if one has not been chosen.

**Legal Action:** The Covered Person may not bring suit to recover under this section until 60 days after he has given Us written proof of loss. No suit may be brought more than three years after the date of loss.

 

## LIFE INSURANCE BENEFIT FOR COVERED PERSON (continued)

**Physical Examination:** We have the right to have a Physician of Our choice examine the Covered Person as often as necessary while the claim is pending. We will pay the cost of the exam.

**Settlement Options:** Instead of a single payment, the Covered Person may choose to have all or part of the insurance paid under one of the settlement options We have available. The settlement options include payment in a lump sum, periodic payments for a fixed period of time or fixed amount payments for an indefinite period of time, at the option of the Covered Person. We will give the Covered Person full information about the options upon request.

**Conversion Privilege:** The Covered Person may convert:

1. all or part of his Life Insurance to an individual policy of life insurance, other than term, if his insurance terminated because he ceases to be a member of a class eligible for insurance;

2. the amount of insurance to an individual policy of life insurance, other than term, that is lost due to a reduction of insurance because of age;

3. a limited amount of insurance to an individual policy of life insurance, other than term, if he has been continuously insured under the Policy (or the policy it replaced) for five years and the insurance terminated due to termination or amendment of the Policy. The amount the Covered Person may convert in this case is the smaller of the following:

   a. the amount of Life Insurance which terminates, less the amount he became eligible for under any Policy within 31 days after this insurance terminated; or

   b. $10,000.

The Covered Person may convert to any policy, other than term, We are issuing for the purpose of conversions. The conversion policy will not have disability or other supplementary benefits. No evidence of insurability will be required. Written application and the first premium payment for the conversion policy must be received in Our Home Office within 31 days after his insurance terminates. The premium will be based on the amount and the form of the conversion policy, and on his class of risk and age on the date the conversion takes effect.

If the Covered Person dies within the 31 days allowed for making application to convert, We will pay the amount he was entitled to convert. We will do this whether or not application was made.

A conversion policy is in lieu of benefits under this section of the Policy. However, if the Covered Person is qualified for the Waiver of Premium-Total Disability provision, the converted policy will be cancelled. Premiums paid for the converted policy will be returned.

Amounts of insurance that the Covered Person has ported will not be eligible for the Conversion Privilege unless the Certificate of Portability is returned.

The conversion policy will take effect on the later of:

1. its date of issue; or

2. 31 days after the date this insurance terminates.

 

## LIFE INSURANCE BENEFIT FOR COVERED PERSON (continued)

The insurance under the Policy may be reinstated within one year after termination of employment, if the Covered Person has converted and he:

1. gives Us proof that he was Totally Disabled when his insurance terminated and that his insurance would have continued in force under the Waiver of Premium-Total ly Disabled provision if he had not converted; and

2. surrenders the conversion policy to Us without claim in return for premiums paid less any unpaid policy loans.

Employees rehired after converting insurance must either lapse that insurance or provide evidence of insurability to keep that individual policy.

Supplemental Life Limitations: No benefit will be paid for any loss caused directly or indirectly from:

1. suicide occurring within 24 months after the Covered Person's initial Effective Date of insurance; or

2. suicide occurring within 24 months after the Effective Date of any increase or additional insurance.

 

## WAIVER OF PREMIUM – TOTAL DISABILITY FOR COVERED PERSON

We will continue the Covered Person's Life Insurance in force without premium payment while he remains Totally Disabled if he:

1. becomes Totally Disabled before age 60;
2. remains Totally Disabled continuously for at least nine consecutive months;
3. gives Us proof of Total Disability, as required.

We will waive the Covered Person's premium payment on a monthly basis, beginning the first day of the month after the month he became Totally Disabled. We will refund any premium paid for the Life Insurance after that day. We will not refund premiums for any period more than 12 months before the date proof of disability was furnished. This Waiver of Premium will continue to be effective even if the Policy terminates after the Covered Person becomes Totally Disabled.

**Amount of Life Insurance Under the Total Disability Benefit:** The amount of insurance continued would be the amount in force on the date the Covered Person became Totally Disabled. This amount will be reduced or terminated, based on the Schedule of Benefits in effect on the date of Total Disability. This amount will not be increased while the Covered Person remains Totally Disabled. All other Benefits will be terminated.

**Death While Totally Disabled:** If the Covered Person dies while his Life Insurance is being continued under Waiver of Premium, We will pay the amount of insurance if We receive proof:

1. of the Covered Person's death; and
2. that Total Disability was continuous from the date it began to the date of death.

**Proof of Total Disability:** We will provide forms which the Covered Person must use when giving Us proof of Total Disability. The Covered Person must give Us proof no later than 12 months after the date he became Totally Disabled. We may at any time require proof that Total Disability continues. The Covered Person must give Us proof within 60 days after Our request. After the Covered Person has been Totally Disabled for more than two years from the date of Total Disability, We will not request proof any more than once a year. We may require the Covered Person to be examined, at Our expense, by a Physician of Our choice.

**Total Disability or Totally Disabled:** For purposes of this section. the Covered Person will be considered Totally Disabled if he is unable to perform each and every duty of his occupation at his usual place of employment and he is unable to do the material and substantial duties of any job suited to his education, training or experience.

We may require the Covered Person to be examined by a Physician, other medical practitioner or vocational expert of Our choice. We will pay for this examination. We can require an examination as often as it is reasonable to do so.

**Termination of the Total Disability Benefit:** The Covered Person will no longer be eligible for the Total Disability Benefit and his Life Insurance will terminate on the earlier of the following dates:

1. the date the Covered Person ceases to be Totally Disabled. However, if he is still eligible for Life Insurance when he returns to Active Work, his Life Insurance may be continued in force if premium payments are resumed. If this is done, any increased amount of Life Insurance he may then be eligible for will take effect as described in the Effective Date of insurance provision; or

 

## WAIVER OF PREMIUM – TOTAL DISABILITY FOR COVERED PERSON
### (continued )

2.  the last day of the 60-day period following Our request for proof of Total Disability, if he does not give Us proof or refuses to take a medical exam;

3.  the date the Covered Person reaches age 65;

4.  the date premium has been waived for 12 months and the Covered Person is considered to reside outside the United States. The Covered Person is considered to reside outside the United States when he has been outside the United States for a total period of 6 months or more during any 12 consecutive months for which premium has been waived.

If the Covered Person's Total Disability ends and he does not return to Active Work, then the Covered Person may exercise the Conversion Privilege.

 

## ACCELERATED DEATH BENEFIT FOR COVERED PERSON

The Accelerated Death Benefit payment may be taxable to the Covered Person. The Covered Person should seek assistance from his personal tax advisor regarding taxes the Covered Person may have to pay as the result of claiming Accelerated Death Benefits.

If while insured under the Policy, the Covered Person becomes terminally ill (called the "qualifying event") with a life expectancy of less than 12 months and the Covered Person has met all of the conditions set forth below. We will pay the Covered Person the amount of insurance shown in the Schedule of Benefits.

The Covered Person may elect to receive an Accelerated Death Benefit amount that is stated on the Schedule of Benefits. However, an Accelerated Death Benefit payment against the Covered Person's Life Insurance Benefit can only be made once in the Covered Person's lifetime.

The Life Insurance Benefit amount will be reduced by the amount paid under this provision.

The Covered Person must submit written medical evidence signed by the treating Physician and acceptable to Us that he is:

1. under a Physician's care for that condition, and

2. has a life expectancy of less than 12 months.

The Accelerated Death Benefit amount will be paid to the Covered Person after the Covered Person meets all of the conditions listed above.

We reserve the right to ask for a medical exam in connection with a claim.

The Covered Person must continue to pay any applicable premium for the amount of Life Insurance Benefits remaining after the reduction.

Upon the Covered Person's death, the amount of Life Insurance Benefits paid to the Covered Person's beneficiary will be reduced by the amount already paid under this provision.

**Limitations:** Accelerated Death Benefits will not be payable if:

1. the Covered Person has assigned his Life Insurance Benefits; or

2. We have been notified that all or a portion of the Life Insurance Benefits are to be paid to the Covered Person's former spouse as part of a divorce agreement; or

3. the Covered Person is required by law to accelerate benefits in order to meet the claims of creditor(s); or

4. the Covered Person is required by a government agency to accelerate benefits in order to qualify for a government benefit or entitlement.

The Accelerated Death Benefit is not available to Retired Covered Persons.

 

## PORTABILITY PRIVILEGE FOR SUPPLEMENTAL LIFE INSURANCE FOR COVERED PERSON

This provision applies only to the Covered Person's Supplemental Life Insurance Benefit. It does not apply to Basic Life Insurance Benefit or Accidental Death and Dismemberment Benefit, as contained in the Policy.

The Covered Person may not elect a portable Certificate of Insurance unless the Covered Person has been insured by the Policy, or the one it replaced, for at least three consecutive months prior to the date the Covered Person's insurance under the Policy ends.

The Covered Person may elect to continue all or part of his Supplemental Life Insurance Benefit, by electing a portable Certificate of Insurance, subject to the following terms and restrictions.

The Covered Person may "port" his insurance if the insurance under the Policy ends for any reason other than:

1.  termination of employment due to Sickness or Injury;
2.  failure to pay any required premium;
3.  the termination of the Policy; or
4.  attainment of age 70.

The Covered Person may not port his insurance, if the Covered Person has reached his 70th birthday on the day his insurance under the Policy terminates.

The Covered Person may port the full amount of his Supplemental Life Insurance amount as of the day insurance under the Policy terminates.

The Maximum amount that a Covered Person is eligible to port is the lesser of the Covered Person's insurance under the Policy, or $250,000.

The Covered Person can port to a portable Certificate of Insurance. The certificate provides term Group Life Insurance. This does not provide for Waiver of Premium benefit. The benefits provided by the portable Certificate of Insurance may not be identical to the benefits provided by the Policy.

To get a portable Certificate of Insurance, the Covered Person must apply to Us in writing and pay the required premium. The Covered Person has 31 days from the date insurance under the Policy ends to do this. We won't ask for proof that the Covered Person is insurable.

No Covered Person is allowed to convert his insurance, and elect a portable Certificate of Insurance at the same time. If a situation arises in which a Covered Person would be eligible to both convert and port, he may only exercise one of these privileges. The Covered Person may never be insured under both a converted policy and a portable Certificate of Insurance at the same time.

Employees rehired after porting insurance must either lapse that insurance or provide evidence of insurability to keep the porting insurance.

 

## ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT FOR COVERED PERSON

If the Covered Person suffers a loss described below, We will pay the amount of insurance that applies. The Covered Person, or the Covered Person's beneficiary, must give Us proof that:

1. Injury occurred while the insurance was in force under this section;

2. the Sickness began while the Covered Person was insured under the Policy;

3. loss occurred within 90 days after the Injury; and

4. loss was due to Injury independent of all other causes.

**Amount of Insurance:** The amount of insurance shown in the Schedule of Benefits will be paid according to the following table:

| | |
|---|---|
| Loss of life | 100% |
| Loss of both hands or both feet | 100% |
| Loss of sight of both eyes | 100% |
| Loss of one hand and sight of one eye | 100% |
| Loss of one foot and sight of one eye | 100% |
| Quadriplegia | 100% |
| Paraplegia | 50% |
| Hemiplegia | 50% |
| Loss of one hand | 50% |
| Loss of one foot | 50% |
| Loss of sight of one eye | 50% |
| Loss of speech | 25% |
| Loss of hearing | 25% |

Loss of sight means total and irrecoverable loss of sight. Loss of hands or feet means severance at or above the wrist or ankle. Loss of thumb and index finger means the actual, complete and permanent severance through or above the metacarpop halangeal joints. Loss of speech means the total and irrecoverable loss of speech. Loss of hearing means total and irrecoverable loss of hearing. Quadriplegia means total and permanent Paralysis of both upper and lower limbs. Paraplegia means total and permanent Paralysis of both lower limbs. Uniplegia means the total and permanent Paralysis of one limb. Triplegia means the total and permanent Paralysis of three limbs. Hemiplegia means total and permanent Paralysis of upper and lower limbs on one side of the body. Paralysis means permanent impairment and loss of the ability to voluntarily move or to have sensation in any entire extremity. Paralysis must be the result of an Injury to the brain or spinal cord and without the severance of a limb.

In paying this benefit, We will consider only losses sustained while insured under this section of the Policy. We will pay no more than the full amount shown in the Schedule of Benefits for losses resulting from any one Injury.

 

## ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT FOR COVERED PERSON (continued)

**Seat Belt Benefit for Covered Person:** We will pay an additional amount equal to 10% of the full amount for the loss of the Covered Person's life that results from injuries sustained while driving or riding in a private Passenger Car if such Covered Person's Seat Belt was properly fastened. However, the amount payable will not exceed $10,000. A benefit is not payable under this provision, if:

1. the Covered Person is either a driver or passenger, and the driver was legally intoxicated or under the influence of drugs at the time of the accident; or
2. the driver of the private Passenger Car does not hold a current and valid driver's license at the time of the accident.

**Passenger Car** means, for the purposes of this Accidental Death and Dismemberment Benefit, any validly registered four-wheel private Passenger Car. Seat Belt means any restraint device which meets published federal safety standards, has been installed by the car manufacturer and has not been altered after such installation. The investigating officer must certify the correct position of the Seat Belt. A copy of the police report must be submitted with the claim.

**Limitations:** We will not pay a benefit for a loss caused directly or indirectly by:

1. disease, bodily or mental infirmity, or medical or surgical Treatment of these;
2. suicide or intentionally self-inflicted Injury, while sane or insane;
3. participation in a riot or insurrection, or commission of an assault or felony;
4. war or any act of war, declared or undeclared;
5. use of any drug, hallucinogen, controlled substance, or narcotic unless prescribed by a Physician;
6. driving while intoxicated, as defined by the applicable state law where the loss occurred;
7. engaging in the following hazardous activities, including skydiving, hang gliding, auto racing, dirt bike riding, mountain climbing, Russian Roulette, autoerotic asphyxiation, bungee jumping or using off-road vehicles;
8. Injury arising out of or in the course of any occupation or employment for pay or profit, or any Injury or Sickness for which the Covered Person is entitled to benefits under any Workers Compensation Law, Employers Liability Law or similar law, unless this insurance is issued on an occupational (24 hour) basis as shown in the Schedule of Benefits;
9. travel or flight in, or descent from any aircraft, unless as a fare-paying passenger on a commercial airline flying between established airports on: a) a scheduled route; or b) a charter flight seating 15 or more people.

**Notice of Claim:** Written notice of a claim for death or Injury must be given to Us at Our Home Office by the Covered Person or his beneficiary within 30 days of the date of death or the date the Injury occurred. If it is not possible, written notice must be given as soon as it is reasonably possible to do so.

The claim form is available from the Covered Person's employer, or can be requested from Us. If the Covered Person does not receive the form from Us within 15 days of his request, written proof of claim should be sent to Us without waiting for the form. Written proof should establish facts about the claim such as date of occurrence, nature, and extent of the loss involved.

**Proof of Claim:** Written proof of claim must be filed within 90 days of the loss. However, if it is not possible to give proof within 90 days, it must be given no later than one year after the time proof is otherwise required, except in the absence of legal capacity.

17

 

## ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT FOR COVERED PERSON (continued)

**Payment of Claim:** Payment of Claim for loss of life will be paid in accordance with the beneficiary section. All other benefits under the Policy are paid to the Covered Person. Payment will be made within 25 days of receipt of satisfactory Proof of Claim by Us, if submitted electronically. The initial Disability payment will be made within 35 days of receipt of satisfactory Proof of Claim by Us. if submitted in paper format.

**Legal Action:** The Covered Person may not bring suit to recover under this section until 60 days after he has given Us written proof of loss. No suit may be brought more than three years after the date of loss.

**Physical Examination and Autopsy:** We have the right to have a Physician of Our choice examine the Covered Person as often as necessary while the claim is pending. We may also have an autopsy made in case of death. unless not allowed by law. We will pay the cost of the exam and autopsy.

**Assignment:** Accidental Death and Dismemberment insurance provided by the Policy cannot be assigned.

 

# United HealthCare Insurance Company
# Notice of Privacy Policy and Practices

### Purpose of this Notice

United HealthCare Insurance Company respects the privacy of personal information and understands the importance of keeping this information confidential and secure. This Notice describes how we protect the confidentiality of the personal information we receive. Our practices apply to current and former members.

### Types of Personal Information We Collect

We collect a variety of personal information to administer a member's life or health coverage. Some of this information is provided by members in enrollment forms, surveys and correspondence (such as address, Social Security number, and dependent information). We also receive personal information (such as eligibility and claims information) through transactions with our affiliates and members, employers, insurance agents, other insurers, and health care providers. We retain this information after a member's coverage ends. We limit the collection of personal information to that which is necessary to administer our business, provide quality service and meet regulatory requirements.

### How We Protect Personal Information

We treat personal information securely and confidentially. We limit access to personal information to only those persons who need to know that information to provide our products or services to members (for example, our claims processors and care coordinators). These persons are trained on the importance of safeguarding this information and must comply with our procedures and applicable law. We meet strict physical, electronic and procedural security standards to protect personal information and maintain internal procedures to promote the integrity and accuracy of that information.

### Disclosure of Personal Information

We may share any of the personal information we collect (as described above) with our affiliates as permitted by law. We may also disclose this information to non-affiliated entities or individuals as permitted or required by law. Non-affiliates with whom we may disclose information as permitted by law include our attorneys, accountants and auditors, a member's authorized representative, health care providers, third party administrators, insurance agents and brokers, other insurers, consumer reporting agencies, and law enforcement or regulatory authorities. We may also disclose any of the personal information we collect (as described above) to companies that perform marketing services on our behalf or to other companies with whom we have joint marketing or disease management agreements. We do not disclose personal information to any other third parties without a member's request or authorization.

### Individual Rights to Access and Correct Personal Information

We have procedures for a member to access the personal information we collect, and other than information we collect in connection with, or in anticipation of, a lawsuit or legal claim, we will make this information available to the member upon written request. Our goal is to keep our member information up-to-date and to correct inaccurate information. We have procedures in place to ensure the integrity of our information and for the timely correction of incorrect information. If you believe that any personal information we have about you is not accurate, please let us know by contacting our Compliance Officer at Unimerica Workplace Benefits, Mail Route MN010-W115, 6300 Olson Memorial Highway, Golden Valley, MN 55427.

### Further Information

We may amend our privacy policy from time to time. In accordance with applicable law, we will send our current customers a Notice describing our privacy policy and practices at least once a year. It will also be available upon request. This Notice is provided on behalf of the following United HealthCare Insurance Company affiliates:

EXHIBIT "1"
Page 19 of 20

 

For purposes of this Notice of Privacy Practices, "we" or "us" refers to the following UnitedHealthcare entities: All Savers Insurance Company; AmeriChoice of New Jersey, Inc.; AmeriChoice of New York, Inc.; AmeriChoice of Pennsylvania, Inc.; Arizona Physicians IPA, Inc.; Dental Benefit Providers of California, Inc.; Dental Benefit Providers of Illinois, Inc.; Dental Benefit Providers of Maryland, Inc.; Dental Benefit Providers of New Jersey, Inc.; Evercare of Arizona, Inc.; Evercare of Texas, L.L.C.; Fidelity Insurance Company; Golden Rule Insurance Company; Great Lakes Health Plan, Inc.; MAMSI Life and Health Insurance Company; MD-Individual Practice Association, Inc.; Midwest Security Life Insurance Company; Optimum Choice, Inc.; Optimum Choice of the Carolinas, Inc.; Rooney Life Insurance Company; Spectera, Inc.; Spectera Eyecare of North Carolina, Inc.; Spectera Vision, Inc.; Spectera Vision Services of California, Inc.; Unimerica Insurance Company; Unimerica Life Insurance Company; Unimerica Life Insurance Company of New York; United Behavioral Health; United HealthCare of Alabama, Inc.; United HealthCare of Arizona, Inc.; United HealthCare of Arkansas, Inc.; United HealthCare of Colorado, Inc.; United HealthCare of Florida, Inc.; United HealthCare of Georgia, Inc.; UnitedHealthcare of Illinois, Inc.; United HealthCare of Kentucky, Ltd.; United HealthCare of Louisiana, Inc.; UnitedHealthcare of the Mid-Atlantic, Inc.; United HealthCare of the Midlands, Inc.; United HealthCare of the Midwest, Inc.; United HealthCare of Mississippi, Inc.; UnitedHealthcare of New England, Inc.; UnitedHealthcare of New Jersey, Inc.; UnitedHealthca re of New York, Inc.; UnitedHealthcare of North Carolina, Inc.; United HealthCare of Ohio, Inc.; United HealthCare of Tennessee, Inc.; United HealthCare of Texas, Inc.; United HealthCare of Utah; UnitedHealthcare of Wisconsin, Inc.; United HealthCare Insurance Company; United HealthCare Insurance Company of Illinois; United HealthCare Insurance Company of New York; United HealthCare Insurance Company of Ohio; and U.S. Behavioral Health Plan, California.

FILED

**IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, MISSISSIPPI**

2016 MAR -3  PM 3: 44

**ESTATE OF MICHAEL V. POWERS, DECEASED**                          **PLAINTIFF**

**VS**                                      CIVIL ACTION NUMBER: _____ 16CV028(W)_

CIRCUIT CLERK

**UNITED HEALTHCARE OF MISSISSIPPI, INC.,**
**UNITED HEALTHCARE SPECIALTY BENEFITS and**
**XYZ CORPORATIONS 1-10**                                      **DEFENDANTS**

---

### COMPLAINT

---

Comes now, plaintiff, the Estate of Michael V. Powers, by F.W. Mitts, III, Executor, and for

Complaint for breach of contract for denial of benefits would show unto the Court as follows:

**1.**

Plaintiff is the Estate of Michael V. Powers, deceased, who was a resident of Lauderdale

County, Mississippi at the times of the occurrence which is the subject of this Complaint, F.W.

Mitts, III is the duly appointed Executor of the Estate of Michael V. Powers and has been authorized

by Order of the Chancery Court of Lauderdale County, Mississippi in civil action no. 13-394(M) to

prosecute this cause of action stated in this Complaint.

Defendant, United Healthcare of Mississippi, Inc., is a Mississippi corporation upon whom

process may be served by service upon its registered agent for service of process, CT Corporation

System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

Defendant, United Healthcare Specialty Benefits, LLC is a limited liability company

organized under the laws of the state of Maine upon whom process may be served by service upon

its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood,

Mississippi 39322.

Defendants, XYZ Corporations 1-10, are fictitious and unknown parties who may be the



EXHIBIT
2

I CERTIFY THIS IS A TRUE AND CORRECT
THE DOCUMENT/S FILED IN THIS
OFFICE DATE 3/22/16
WILL JOHNSON, CIRCUIT CLERK
_Renee Covert_ D.C.

proper corporate entities that issued the uninsured motorist policy to the plaintiff for which claim is made in this action. The identity of these parties are unknown at this time and can only be ascertained through the use of discovery. Upon learning the identity of this party or parties, the plaintiff may substitute it for the fictitious parties under Rule 9(h) of the Mississippi Rules of Civil Procedure. Alternatively, in the event plaintiff has sued the wrong party and is required to change parties, such amendment will be made in accordance with Rule 15(c) of the Mississippi Rules of Civil Procedure.

**2.**

The decedent, Michael V. Powers, was an employee of Peavey Electronics in Meridian, Lauderdale County, Mississippi on March 6, 2013 when he sustained an accidental injury to his right eye which resulted in disfigurement and the loss of sight in one eye.

**3.**

Michael V. Powers subsequently died as a result of a cardio pulmonary arrest and probable acute myocardial infarction on April 29, 2013 and the plaintiff herein was appointed as the Executor of the decedent's estate by Judgment entered by the Lauderdale County Chancery Court in Civil Action Number 13-394(M) dated May 1, 2013.

**4.**

At all relevant times, decedent was a Covered Person as defined by that certain policy of insurance numbered ███0483 issued by United Healthcare Insurance Company to Peavey Electronics Corporation. A true and correct copy of such policy is attached hereto as **EXHIBIT "1"**.

**5.**

The aforesaid policy of insurance provided Accidental Death And Dismemberment benefits to Covered Persons which provided 50% of the amount of insurance shown in its Schedule of

Benefits for the "loss of sight of one eye". The Schedule of Benefits provided a Basic Accidental Death And Dismemberment Benefit of $25,000.

**6.**

The Executor, on behalf of the decedent, properly made a claim for benefits pursuant to policy number ████0483 issued by United Healthcare Insurance Company to Peavey Electronics Corporation.

**7.**

The claim presented to United Healthcare through United Healthcare Specialty Benefits was denied. The Executor exhausted all administrative appeals processes and now brings this action for denial of benefits.

**8.**

The decedent's estate is entitled to recover 50% of the amount of insurance shown on the schedule of benefits for the loss of sight of one eye under the policy's Accident Death And Dismemberment Benefits, Covered Person's provisions. The decedent's estate has been denied that benefit.

**9.**

Plaintiff demands trial by jury.

**PREMISES CONSIDERED**, plaintiff moves that Summons be issued for United Healthcare of Mississippi, Inc. and United Healthcare Specialty Benefits, Inc. and that the Court hear plaintiff's cause of action and issue a Judgment in the amount of $12,500 against defendants pursuant to the Accidental Death And Dismemberment Benefits provisions of the policy of insurance and, further, that plaintiff receive a judgment against defendants for all costs of this action, including attorney's fees, pursuant to 29 U.S.C. §1132(a)(1)(B) [ERISA §502(a)(1)(b)].

This the 3rd day of March, 2016.

                    Respectfully submitted,

                    **ESTATE OF MICHAEL V. POWERS, DECEASED**

                    **F.W. MITTS, III, EXECUTOR, MSB #3389**
                    Martin, Rogers & Mitts
                    P.O. Box 5247
                    Meridian, MS 39302
                    Telephone: 601-693-6516
                    Facsimile: 601-483-3615
                    Email: bmitts01@bellsouth.net

Prepared by:

Grace W. Mitts      MSB #3390
Witherspoon & Compton, LLC
P.O. Box 845
Meridian, MS 39302
Telephone: 601-693-6466
Facsimile: 601-693-4840
Email: gmitts@witherspooncompton.com

OF COUNSEL FOR PLAINTIFF

O:\GJCFILES\GWM\15922\Claim against UHC\Complaint.wpd

 

United HealthCare Insurance Company

450 Columbus Boulevard

Hartford, Connecticut

(Home Office)

Policyholder:  Peavey Electronics Corporation

Effective Date of Policyholder:  July 1, 2005

Policy Number: ▓▓0483

Covered Person:  As on file with the Administrator

Certificate Number:  As on file with the Administrator

Certificate Effective Date:  As on file with the Administrator

Beneficiary:  As on file with the Administrator

We, United HealthCare Insurance Company, issue this Certificate to the Covered Person as evidence of insurance under the Policy We issued to the Policyholder shown above. This Certificate describes the benefits and other important provisions of the Policy. Please read it carefully.

The Policy may be amended, changed, cancelled or discontinued without the consent of the Covered Person or the Covered Person's beneficiary.

The benefits described in this Certificate insure the Covered Person eligible for insurance.

**Read the Group Certificate Carefully**

**Please Note:  The Life Insurance Death Benefit will be reduced if you receive an accelerated benefit.**

This is a legal contract between the Policyholder and Us. If the Policyholder has any questions or problems with the Policy, We will be ready to help the Policyholder. The Policyholder may call upon his agent or Our Home Office for assistance at any time.

If the Policyholder, or the Covered Person have questions, need information about their insurance, or need assistance in resolving complaints, call 1-866-615-8727.

It is signed at the Home Office of United HealthCare Insurance Company as of the Effective Date shown above.

*Matthew Friedman*

Secretary

Group Life, Accidental Death and
Dismemberment Insurance Policy
Non-Participating

*ned B Clly*

President

Administrative Office:
9900 Bren Road East
Minnetonka, MN 55343

 

## SCHEDULE OF BENEFITS

**Class of Employees**
This schedule covers the following class(es) of Employees of companies and affiliates controlled by the Policyholder:

All other full-time Employees, excluding Executives, temporary and seasonal employees

**Description of Class:**

Employees are considered full-time if they customarily work: 30 hours per week

**Employee Waiting Period:**

An Employee is eligible for insurance the first day of the month following the date he completes 90 days of continuous employment with the Policyholder.

**Covered Person Insurance:**

**Basic Life Insurance Benefit:**

$25,000

Basic Life Insurance Benefit will reduce to 65% at age 65, 50% at age 70 and terminate at retirement.

**Supplemental Life Insurance Benefit:**

The benefit amount applicable to the Covered Person is that which is elected at the time of enrollment.

$10,000 to $250,000 in increments of $10,000, but cannot exceed 5 times basic Annual Earnings

**Annual Earnings Definition:** The Annual Earnings received from the Covered Person's employer for the year ending immediately prior to the Policy Anniversary period. Annual Earnings do not include commissions, bonuses, overtime pay and other extra compensation. Annual Earnings will be rounded to the next higher thousand.

Supplemental Life Insurance Benefit will reduce to 65% at age 65, 50% at age 70 and terminate at retirement.

**Basic Accidental Death and Dismemberment Benefit:**

$25,000

Basic Accidental Death and Dismemberment Benefit will reduce to 65% at age 65, 50% at age 70 and 75% at age 80

Basic Accidental Death and Dismemberment Benefits are issued on an

☒ occupational (24 hour) basis    ☐ non-occupation al basis

**Accelerated Death Benefit:** Up to 50% of the combined Basic Life Insurance and Supplemental Life Insurance in force to a maximum $50,000. Employee must have at least $10,000 in Life Insurance in-force to qualify for this benefit.

**Evidence of Insurability Requirements:**
Evidence of insurability will be required:
1. for any amount of Employee Supplemental Life Insurance in excess of the lesser of 3 times basic Annual Earnings or $50,000.
2. for any elected increase in the amount of Employee Supplemental Life Insurance.

 

## GENERAL DEFINITIONS

The male pronoun, whenever used in the Policy, includes the female.

**Active Work or Actively at Work:** The Covered Person reports for work at his usual place of employment or any other business location where he is required to travel and is able to perform the material and substantial duties of his regular occupation for the entire normal workday. The Covered Person must be working at least the minimum number of hours per week in an Eligible Class, as shown in the Schedule of Benefits.

Unless Disabled on the prior workday or on the day of absence, a Covered Person will be considered Actively at Work on the following days:

1. a Saturday, Sunday or holiday which is not a scheduled workday;

2. a paid vacation day, or other scheduled or unscheduled non-workday; or

3. an excused or emergency leave of absence (except medical leave.)

**Contributory or Non-Contributory Insurance:** Contributory Insurance is insurance for which the Covered Person must apply and agree to make the required premium contributions. Non-Contributory Insurance is insurance for which the Covered Person does not have to make any premium contributions.

**Covered Person:** The Employee insured under the Policy. References to "Covered Person," "Covered Persons" and "Covered Person's" throughout this Certificate are references to a Covered Person.

**Dependent:** Includes

1. a legal Spouse; and

2. any unmarried Child.

A Child is:

1. an Eligible Student;
   a. who is not married;
   b. who is not in the armed forces of any country;
   c. who is not insured under the Policy as a Covered Person;
   d. who is less than 25 years of age;
   e. who attends an accredited post-secondary school (other than a correspondence school) on a full-time basis as defined by the post-secondary school; and
   f. is enrolled in the next scheduled term.

   or

2. physically or mentally Disabled.

   The term "Child" includes a natural child, legally adopted child, stepchild, foster child, or any child who lives with the Covered Person in a regular parent-child relationship, provided the Covered Person claims such Child as a Dependent on the Covered Person's most recent federal income tax return.

**Employee:** A person who is:

1. directly employed in the normal business of the Policyholder; and

2. paid for services by the Policyholder; and

3. Actively at Work for the Policyholder, or any subsidiary or affiliate insured under the Policy.

No director or officer of the Policyholder will be considered an Employee unless he meets the above conditions.

 

## GENERAL DEFINITIONS (continued)

**Hospital or Medical Facility:** A legally operated, accredited facility licensed to provide full-time care and Treatment for the condition for which benefits are payable under the Policy. It is operated by a full-time staff of licensed physicians and registered nurses. It does not include facilities that primarily provide custodial, education or rehabilitative care, or long-term institutional care on a residential basis.

**Injury:** A bodily Injury resulting directly from an accident and independently of all other causes.

**Physician:** A practitioner of the healing arts who is:
1.   duly licensed in the state in which the Treatment is received; and
2.   practicing within the scope of that license.

The term Physician does not include the Covered Person, the Covered Person's spouse, children, parents, parents-in-law, or siblings.

**Regular Care:** The Covered Person personally visits a Physician as often as is medically required to effectively manage and treat his disabling condition(s), according to generally accepted medical standards. The Covered Person is receiving appropriate Treatment and care, according to generally accepted medical standards, by a Physician whose specialty or experience is appropriate for the disabling condition(s).

**Sickness:** An illness, disease, pregnancy or complication of pregnancy.

**Treatment:** consultation, advice, tests, attendance or observation, supplies or equipment, including the prescription or use of prescription drugs or medicines.

**We, Our and Us:** United HealthCare Insurance Company.

 

## CERTIFICATE GENERAL PROVISIONS

**Discretionary authority:** When making a benefit determination under the Policy, We have discretionary authority to determine the Covered Person's or Dependent's eligibility, if applicable, for benefits and to interpret the terms and provisions of the Policy. This provision applies, however, only where the interpretation of the Policy is governed by the Employee Retirement Income Security Act (ERISA).

**Fraud :** We will focus on all means necessary to support fraud detection, investigation, and prosecution. It may be a crime if the Covered Person or the employer knowingly, and with intent to injure, defraud or deceive Us, files a claim containing any false, incomplete, or misleading information. These actions, as well as submission of false information, will result in denial of the Covered Person's claim, and are subject to prosecution and punishment to the full extent under state and/or federal law. We will pursue all appropriate legal remedies in the event of insurance fraud.

**Incontestability :** We may not contest the validity of the Policy, except for the non-payment of premiums or fraudulent misrepresentations, after it has been in force for two years from its date of issue. No statement made by any Covered Person relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such person's lifetime, nor unless it is contained in a written instrument signed by him. This clause will not affect Our right to contest claims made for acciden tal death or accidental dismemberment benefits.

**Information To Be Furnished:** The Policyholder may be required to furnish any information needed to administer the Policy. Clerical error by the Policyholder will not:

1. affect the amount of insurance which would otherwise be in effect; or
2. continue insurance which otherwise would be terminated; or
3. result in the payment of benefits not otherwise payable.

Once an error is discovered, an equitable adjustment in premium will be made. If the premium adjustment involves the return of unearned premium, the amount of the return will be limited to the 12-month period, which precedes the date We rece ive proof such an adjustment should be made. We may inspect any of the Policyholder's records which relate to the Policy.

**Misstatement Of Age:** If a Covered Person's age has been misstated, premiums will be subject to an equitable adjustment. If the amount of the benefit depends upon age, then the benefit will be that which would have been payable, based upon the person's correct age.

**Payment of Premiums:** No insurance provided by the Policy will be in effect until the first premium for such insurance is paid. For insurance to remain in effect, each subsequent premium must be paid on or before its due date. The Policy holder is responsible for paying all premiums as they become due. Premiums are payable on or before their due dates at Our Home Office. A Grace Period of 31 days from the Premium Due Date will be allowed for the payment of each premium after the first premium payment. During the Grace Period, the insurance will remain in effect provided the premium is paid before the end of the Grace Period. Payment of Premium for a period before it is due will not guarantee that the insurance will remain in effect for that period.

 

## CERTIFICATE GENERAL PROVISIONS (continued)

**Premium Rate Change:** We have the right to change premium rates as of any Premium Due Date but not more than once in any 12-month period. We will notify the Policyholder in writing at least 31 days prior to the change in rates.

The premium rate may change prior to this time however, for reasons that affect the insured risk, which include:

1. a change occurs in benefits;
2. a division, subsidiary, or affiliated company is added or deleted;
3. the number of Employees insured changes by 10% or more;
4. a new Law or a change in any existing Law is enacted which applies to the Policy.

A change may take effect on an earlier date if both the Policyholder and We agree to it. Except in the case of fraud, premium adjustments, refunds or charges will be made for only the current Policy year.

**Records:** The Policyholder must furnish all information required by Us to:

1. compute premiums; and

2. maintain necessary administrative records.

Records of the Policyholder, which have a bearing on insurance, will be available for inspection by Us at any reasonable time.

**Workers' Compensation:** The Policy is not to be construed to provide benefits required by Workers' Compensation laws.

 

## COVERED PERSON ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

**Covered Person's Eligibility:** Employees who work on a full-time basis for a Policyholder are eligible for insurance after completion of the required Employee Waiting Period, provided they are in a class of Employees who are included. Employees will be considered to work on a full-time basis if they customarily work at least the number of hours per week shown in the Schedule of Benefits.

An Employee will become eligible for insurance on the latest of the following dates:

1. the Effective Date of the Policy;

2. the end of the Employee Waiting Period shown in the Schedule of Benefits;

3. the date the Policy is changed to include the Employee's class; or

4. the date the Employee enters a class eligible for insurance.

**Effective Date of Covered Person Insurance:** If an Employee is not Actively at Work on the date his insurance is scheduled to take effect, it will take effect on the day after the date he returns to Active Work. If the Employee's insurance is scheduled to take effect on a non-working day, his Active Work status will be based on the last working day before the scheduled Effective Date of his insurance.

An Employee must use forms provided by Us when applying for insurance.

The Employee's insurance will be effective at 12:01 A.M. Eastern Standard time as follows:

1. if it is Non-contributory, on the date the Employee becomes eligible for insurance, regardless of when he applies, or

2. if it is Contributory, and the Employee makes application within 31 days after the date he first became eligible, on the later of:

   a. the date the Employee is eligible for insurance, regardless of when he applies; or

   b. the date the Employee's application is approved by Us if evidence of insurability is required.

Evidence of insurability is required if an Employee applying for Contributory Insurance:

1. does not apply for insurance within 31 days after the date he first became eligible; or

2. he has previously terminated his insurance while in an eligible class.

**Effective Date of Change in Amount of Insurance:** If there is an increase in the amount of the Covered Person's insurance, the increase will take effect on:

1. the policy anniversary date on or next following the date of the increase, if the Covered Person is Actively at Work on the date of increase;

2. the date the Covered Person returns to Active Work if the Covered Person is not Actively at Work on the policy anniversary date on or next following the date of the increase;

3. the policy anniversary date on or next following the date of the increase, if the policy anniversary date is a non-working day and the Covered Person was Actively at Work on his last scheduled working day before the non-working day;

4. the date of the increase if the Covered Person is on an approved layoff or leave of absence, for reasons other than a Sickness or Injury.

If evidence of insurability is required, the increase will take effect on the later of the dates indicated above or the date We approve his application.

A decrease in the amount of the Covered Person's insurance will take effect on the first day of the month on or next following the date of the decrease.

 

## COVERED PERSON ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS (continued)

**Family and Medical Leave of Absence:** If the Covered Person is on a Family or Medical Leave of Absence, his insurance will be governed by his employer's policy on Family and Medical Leaves of Absence.

We will continue the Covered Person's insurance if the cost of his insurance continues to be paid and his Leave of Absence is approved in advance and in writing by his employer.

The Covered Person's insurance will continue for up to the greater of:
1. the leave period required by the Federal Family and Medical Leave Act of 1993; or
2. the leave period required by applicable state law.

While the Covered Person is on a Family or Medical Leave of Absence, We will use earnings from his employer just prior to the date his Leave of Absence started to determine Our payments to him.

If the Covered Person's insurance does not continue during a Family or Medical Leave of Absence, then when he returns to Active Work:
1. he will not have to meet a new Employee Waiting Period including a Waiting Period for insurance of a Pre-Existing Condition, if applicable; and
2. he will not have to give Us evidence of insurability to reinstate the insurance he had in effect before his Leave of Absence began.

However, time spent on a Leave of Absence, without insurance, does not count toward satisfying his Employee Waiting Period.

**Termination of Covered Person Insurance:** The Covered Person's insurance will terminate at 12:00 midnight Eastern Standard time on the earliest of the following dates:

1. the last day of the period for which a premium payment is made, if the next payment is not made;
2. the date he ceases to be a member of a class eligible for insurance;
3. the date the Policy terminates, or a specific benefit terminates; or
4. the date he ceases to be Actively at Work.
   a. If active work ceases during an approved layoff, medical leave or non-medical leave of absence, the insurance will not continue more than 3 months from the date he stopped active work.
   b. If active work ceases due to a sickness or accidental injury, and the Covered Person is eligible for the Waiver of Premium provision in this Certificate, the Policyholder may continue the Covered Person's insurance for up to 12 months from the date he stopped active work.
5. the date he is no longer Actively at Work due to a labor dispute, including but limited to strike, work slow down or lock out.

 

## LIFE INSURANCE BENEFIT FOR COVERED PERSON

**Death Benefits:** We will pay the Covered Person's beneficiary the amount of insurance in force on the date of death when We receive satisfactory proof of a Covered Person's death. The benefit will be paid in accordance with the beneficiary section.

**Assignment:** Life insurance as provided by the Policy may be assigned as an absolute assignment only. In making an assignment, the Covered Person must transfer all his present and future ownership rights to the person to whom he assigned the insurance. This includes the right to change the beneficiary and to convert the insurance. The Covered Person may not make a collateral or partial assignment of his insurance.

**Beneficiary:** The Covered Person's beneficiary will be the person(s) he names in writing to receive any amount of insurance payable due to his death.

The Covered Person may name or change a beneficiary by giving Us written notice at Our Home Office on a form acceptable to Us. When We receive the notice, it will be effective on the date made, subject to any payment We may have made before We receive it.

If the Covered Person names more than one beneficiary, those who survive will share equally unless the Covered Person specifies otherwise. If there is no named beneficiary living at the Covered Person's death, We will pay any amount due to the estate or, at Our option, to his:

1. legal spouse;
2. natural or legally adopted children in equal shares; or
3. estate.

**Notice of Claim:** Written notice of a claim for death must be given to Us at Our Home Office by the Covered Person's beneficiary within 30 days of the date of death. If it is not possible, written notice must be given as soon as it is reasonably possible to do so.

The claim form is available from the Covered Person's employer, or can be requested from Us. If the form is not received from Us within 15 days of a request, written proof of claim should be sent to Us without waiting for the form. Written proof must show the cause of death. Also, a certified copy of the death certificate must be given to Us.

**Proof of Claim:** Written proof of claim must be filed within 90 days of the loss. However, if it is not possible to give proof within 90 days, it must be given no later than one year after the time proof is otherwise required, except in the absence of legal capacity.

**Payment of Claim:** Payment of Claim for loss of life will be paid in accordance with the beneficiary section. All other benefits under the Policy are paid to the Covered Person.

If the Covered Person has chosen an option, no one may change it unless the Covered Person consents in writing. The Covered Person's beneficiary may choose an option within 60 days after death if one has not been chosen.

**Legal Action:** The Covered Person may not bring suit to recover under this section until 60 days after he has given Us written proof of loss. No suit may be brought more than three years after the date of loss.

 

## LIFE INSURANCE BENEFIT FOR COVERED PERSON (continued)

**Physical Examination:** We have the right to have a Physician of Our choice examine the Covered Person as often as necessary while the claim is pending. We will pay the cost of the exam.

**Settlement Options:** Instead of a single payment, the Covered Person may choose to have all or part of the insurance paid under one of the settlement options We have available. The settlement options include payment in a lump sum, periodic payments for a fixed period of time or fixed amount payments for an indefinite period of time, at the option of the Covered Person. We will give the Covered Person full information about the options upon request.

**Conversion Privilege:** The Covered Person may convert:

1. all or part of his Life Insurance to an individual policy of life insurance, other than term, if his insurance terminated because he ceases to be a member of a class eligible for insurance;

2. the amount of insurance to an individual policy of life insurance, other than term, that is lost due to a reduction of insurance because of age;

3. a limited amount of insurance to an individual policy of life insurance, other than term, if he has been continuously insured under the Policy (or the policy it replaced) for five years and the insurance terminated due to termination or amendment of the Policy. The amount the Covered Person may convert in this case is the smaller of the following:

    a. the amount of Life Insurance which terminates, less the amount he became eligible for under any Policy within 31 days after this insurance terminated; or

    b. $10,000.

The Covered Person may convert to any policy, other than term, We are issuing for the purpose of conversions. The conversion policy will not have disability or other supplementary benefits. No evidence of insurability will be required. Written application and the first premium payment for the conversion policy must be received in Our Home Office within 31 days after his insurance terminates. The premium will be based on the amount and the form of the conversion policy, and on his class of risk and age on the date the conversion takes effect.

If the Covered Person dies within the 31 days allowed for making application to convert, We will pay the amount he was entitled to convert. We will do this whether or not application was made.

A conversion policy is in lieu of benefits under this section of the Policy. However, if the Covered Person is qualified for the Waiver of Premium-Total Disability provision, the converted policy will be cancelled. Premiums paid for the converted policy will be returned.

Amounts of insurance that the Covered Person has ported will not be eligible for the Conversion Privilege unless the Certificate of Portability is returned.

The conversion policy will take effect on the later of:

1. its date of issue; or

2. 31 days after the date this insurance terminates.

 

## LIFE INSURANCE BENEFIT FOR COVERED PERSON (continued)

The insurance under the Policy may be reinstated within one year after termination of employment, if the Covered Person has converted and he:

1. gives Us proof that he was Totally Disabled when his insurance terminated and that his insurance would have continued in force under the Waiver of Premium-Total ly Disabled provision if he had not converted; and

2. surrenders the conversion policy to Us without cl aim in return for premiums paid less any unpaid policy loans.

Employees rehired after converting insurance must either lapse that insurance or provide evidence of insurability to keep that individual policy.

Supplemental Life Limitations: No benefit will be paid for any loss caused directly or indirectly from:

1. suicide occurring within 24 months after the Covered Person's initial Effective Date of insurance: or

2. suicide occurring within 24 months after the Effective Date of any increase or additional insurance.



## WAIVER OF PREMIUM – TOTAL DISABILITY FOR COVERED PERSON

We will continue the Covered Person's Life Insurance in force without premium payment while he remains Totally Disabled if he:

1. becomes Totally Disabled before age 60;
2. remains Totally Disabled continuously for at least nine consecutive months;
3. gives Us proof of Total Disability, as required.

We will waive the Covered Person's premium payment on a monthly basis, beginning the first day of the month after the month he became Totally Disabled. We will refund any premium paid for the Life Insurance after that day. We will not refund premiums for any period more than 12 months before the date proof of disability was furnished. This Waiver of Premium will continue to be effective even if the Policy terminates after the Covered Person becomes Totally Disabled.

**Amount of Life Insurance Under the Total Disability Benefit:** The amount of insurance continued would be the amount in force on the date the Covered Person became Totally Disabled. This amount will be reduced or terminated, based on the Schedule of Benefits in effect on the date of Total Disability. This amount will not be increased while the Covered Person remains Totally Disabled. All other Benefits will be terminated.

**Death While Totally Disabled:** If the Covered Person dies while his Life Insurance is being continued under Waiver of Premium, We will pay the amount of insurance if We receive proof:

1. of the Covered Person's death; and
2. that Total Disability was continuous from the date it began to the date of death.

**Proof of Total Disability:** We will provide forms which the Covered Person must use when giving Us proof of Total Disability. The Covered Person must give Us proof no later than 12 months after the date he became Totally Disabled. We may at any time require proof that Total Disability continues. The Covered Person must give Us proof within 60 days after Our request. After the Covered Person has been Totally Disabled for more than two years from the date of Total Disability, We will not request proof any more than once a year. We may require the Covered Person to be examined, at Our expense, by a Physician of Our choice.

**Total Disability or Totally Disabled:** For purposes of this section, the Covered Person will be considered Totally Disabled if he is unable to perform each and every duty of his occupation at his usual place of employment and he is unable to do the material and substantial duties of any job suited to his education, training or experience.

We may require the Covered Person to be examined by a Physician, other medical practitioner or vocational expert of Our choice. We will pay for this examination. We can require an examination as often as it is reasonable to do so.

**Termination of the Total Disability Benefit:** The Covered Person will no longer be eligible for the Total Disability Benefit and his Life Insurance will terminate on the earlier of the following dates:

1. the date the Covered Person ceases to be Totally Disabled. However, if he is still eligible for Life Insurance when he returns to Active Work, his Life Insurance may be continued in force if premium payments are resumed. If this is done, any increased amount of Life Insurance he may then be eligible for will take effect as described in the Effective Date of Insurance provision; or

 

## WAIVER OF PREMIUM – TOTAL DISABILITY FOR COVERED PERSON
### (continued )

2. the last day of the 60-day period following Our request for proof of Total Disability, if he does not give Us proof or refuses to take a medical exam;

3. the date the Covered Person reaches age 65;

4. the date premium has been waived for 12 months and the Covered Person is considered to reside outside the United States. The Covered Person is considered to reside outside the United States when he has been outside the United States for a total period of 6 months or more during any 12 consecutive months for which premium has been waived.

If the Covered Person's Total Disability ends and he does not return to Active Work, then the Covered Person may exercise the Conversion Privilege.

WP

13

 

## ACCELERATED DEATH BENEFIT FOR COVERED PERSON

The Accelerated Death Benefit payment may be taxable to the Covered Person. The Covered Person should seek assistance from his personal tax advisor regarding taxes the Covered Person may have to pay as the result of claiming Accelerated Death Benefits.

If while insured under the Policy, the Covered Person becomes terminally ill (called the "qualifying event") with a life expectancy of less than 12 months and the Covered Person has met all of the conditions set forth below, We will pay the Covered Person the amount of insurance shown in the Schedule of Benefits.

The Covered Person may elect to receive an Accelerated Death Benefit amount that is stated on the Schedule of Benefits. However, an Accelerated Death Benefit payment against the Covered Person's Life Insurance Benefit can only be made once in the Covered Person's lifetime.

The Life Insurance Benefit amount will be reduced by the amount paid under this provision.

The Covered Person must submit written medical evidence signed by the treating Physician and acceptable to Us that he is:

1. under a Physician's care for that condition, and

2. has a life expectancy of less than 12 months.

The Accelerated Death Benefit amount will be paid to the Covered Person after the Covered Person meets all of the conditions listed above.

We reserve the right to ask for a medical exam in connection with a claim.

The Covered Person must continue to pay any applicable premium for the amount of Life Insurance Benefits remaining after the reduction.

Upon the Covered Person's death, the amount of Life Insurance Benefits paid to the Covered Person's beneficiary will be reduced by the amount already paid under this provision.

**Limitations:** Accelerated Death Benefits will not be payable if:

1. the Covered Person has assigned his Life Insurance Benefits; or

2. We have been notified that all or a portion of the Life Insurance Benefits are to be paid to the Covered Person's former spouse as part of a divorce agreement; or

3. the Covered Person is required by law to accelerate benefits in order to meet the claims of creditor(s); or

4. the Covered Person is required by a government agency to accelerate benefits in order to qualify for a government benefit or entitlement.

The Accelerated Death Benefit is not available to Retired Covered Persons.

 

## PORTABILITY PRIVILEGE FOR SUPPLEMENTAL LIFE INSURANCE FOR COVERED PERSON

This provision applies only to the Covered Person's Supplemental Life Insurance Benefit. It does not apply to Basic Life Insurance Benefit or Accidental Death and Dismemberment Benefit, as contained in the Policy.

The Covered Person may not elect a portable Certificate of Insurance unless the Covered Person has been insured by the Policy, or the one it replaced, for at least three consecutive months prior to the date the Covered Person's insurance under the Policy ends.

The Covered Person may elect to continue all or part of his Supplemental Life Insurance Benefit, by electing a portable Certificate of Insurance, subject to the following terms and restrictions.

The Covered Person may "port" his insurance if the insurance under the Policy ends for any reason other than:

1. termination of employment due to Sickness or Injury:

2. failure to pay any required premium;

3. the termination of the Policy; or

4. attainment of age 70.

The Covered Person may not port his insurance, if the Covered Person has reached his 70th birthday on the day his insurance under the Policy terminates.

The Covered Person may port the full amount of his Supplemental Life Insurance amount as of the day insurance under the Policy terminates.

The Maximum amount that a Covered Person is eligible to port is the lesser of the Covered Person's insurance under the Policy, or $250,000.

The Covered Person can port to a portable Certificate of Insurance. The certificate provides term Group Life Insurance. This does not provide for Waiver of Premium benefit. The benefits provided by the portable Certificate of Insurance may not be identical to the benefits provided by the Policy.

To get a portable Certificate of Insurance, the Covered Person must apply to Us in writing and pay the required premium. The Covered Person has 31 days from the date insurance under the Policy ends to do this. We won't ask for proof that the Covered Person is insurable.

No Covered Person is allowed to convert his insurance, and elect a portable Certificate of Insurance at the same time. If a situation arises in which a Covered Person would be eligible to both convert and port, he may only exercise one of these privileges. The Covered Person may never be insured under both a converted policy and a portable Certificate of Insurance at the same time.

Employees rehired after porting insurance must either lapse that insurance or provide evidence of insurability to keep the porting insurance.

 

## ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT FOR COVERED PERSON

If the Covered Person suffers a loss described below, We will pay the amount of insurance that applies. The Covered Person, or the Covered Person's beneficiary, must give Us proof that:

1.   Injury occurred while the insurance was in force under this section;

2.   the Sickness began while the Covered Person was insured under the Policy;

3.   loss occurred within 90 days after the Injury; and

4.   loss was due to Injury independent of all other causes.

**Amount of Insurance:**   The amount of insurance shown in the Schedule of Benefits will be paid according to the following table:

| | |
|---|---|
| Loss of life | 100% |
| Loss of both hands or both feet | 100% |
| Loss of sight of both eyes | 100% |
| Loss of one hand and sight of one eye | 100% |
| Loss of one foot and sight of one eye | 100% |
| Quadriplegia | 100% |
| Paraplegia | 50% |
| Hemiplegia | 50% |
| Loss of one hand | 50% |
| Loss of one foot | 50% |
| Loss of sight of one eye | 50% |
| Loss of speech | 25% |
| Loss of hearing | 25% |

Loss of sight means total and irrecoverable loss of sight. Loss of hands or feet means severance at or above the wrist or ankle. Loss of thumb and index finger means the actual, complete and permanent severance through or above the metacarpop halangeal joints. Loss of speech means the total and irrecoverable loss of speech. Loss of hearing means total and irrecoverable loss of hearing. Quadriplegia means total and permanent Paralysis of both upper and lower limbs. Paraplegia means total and permanent Paralysis of both lower limbs. Uniplegia means the total and permanent Paralysis of one limb. Triplegia means the total and permanent Paralysis of three limbs. Hemiplegia means total and permanent Paraly sis of upper and lower limbs on one side of the body. Paralysis means permanent impairment and loss of the ability to voluntarily move or to have sensation in any entire extremity. Paralysis must be the result of an Injury to the brain or spinal cord and without the severance of a limb.

In paying this benefit, We will consider only losses sustained while insured under this section of the Policy. We will pay no more than the full amount shown in the Schedule of Benefits for losses resulting from any one Injury.

Case 3:16-cv-00226-DPJ-FKB Document 1-1 Filed 03/29/16 Page 45 of 67

 

## ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT FOR COVERED PERSON (continued)

**Seat Belt Benefit for Covered Person:** We will pay an additional amount equal to 10% of the full amount for the loss of the Covered Person's life that results from injuries sustained while driving or riding in a private Passenger Car if such Covered Person's Seat Belt was properly fastened. However, the amount payable will not exceed $10,000. A benefit is not payable under this provision, if:

1. the Covered Person is either a driver or passenger, and the driver was legally intoxicated or under the influence of drugs at the time of the accident; or
2. the driver of the private Passenger Car does not hold a current and valid driver's license at the time of the accident.

**Passenger Car** means, for the purposes of this Accidental Death and Dismemberment Benefit, any validly registered four-wheel private Passenger Car. Seat Belt means any restraint device which meets published federal safety standards, has been installed by the car manufacturer and has not been altered after such installation. The investigating officer must certify the correct position of the Seat Belt. A copy of the police report must be submitted with the claim.

**Limitations:** We will not pay a benefit for a loss caused directly or indirectly by:

1. disease, bodily or mental infirmity, or medical or surgical Treatment of these;
2. suicide or intentionally self-inflicted Injury, while sane or insane;
3. participation in a riot or insurrection, or commission of an assault or felony;
4. war or any act of war, declared or undeclared;
5. use of any drug, hallucinogen, controlled substance, or narcotic unless prescribed by a Physician;
6. driving while intoxicated, as defined by the applicable state law where the loss occurred;
7. engaging in the following hazardous activities, including skydiving, hang gliding, auto racing, dirt bike riding, mountain climbing, Russian Roulette, autoerotic asphyxiation, bungee jumping or using off-road vehicles;
8. Injury arising out of or in the course of any occupation or employment for pay or profit, or any Injury or Sickness for which the Covered Person is entitled to benefits under any Workers Compensation Law, Employers Liability Law or similar law, unless this insurance is issued on an occupational (24 hour) basis as shown in the Schedule of Benefits;
9. travel or flight in, or descent from any aircraft, unless as a fare-paying passenger on a commercial airline flying between established airports on: a) a scheduled route; or b) a charter flight seating 15 or more people.

**Notice of Claim:** Written notice of a claim for death or Injury must be given to Us at Our Home Office by the Covered Person or his beneficiary within 30 days of the date of death or the date the Injury occurred. If it is not possible, written notice must be given as soon as it is reasonably possible to do so.

The claim form is available from the Covered Person's employer, or can be requested from Us. If the Covered Person does not receive the form from Us within 15 days of his request, written proof of claim should be sent to Us without waiting for the form. Written proof should establish facts about the claim such as date of occurrence, nature, and extent of the loss involved.

**Proof of Claim:** Written proof of claim must be filed within 90 days of the loss. However, if it is not possible to give proof within 90 days, it must be given no later than one year after the time proof is otherwise required, except in the absence of legal capacity.

**EXHIBIT "1"** ADD(MS)

17

**Page 17 of 20**

 

## ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT FOR COVERED PERSON (continued)

**Payment of Claim:** Payment of Claim for loss of life will be paid in accordance with the beneficiary section. All other benefits under the Policy are paid to the Covered Person. Payment will be made within 25 days of receipt of satisfactory Proof of Claim by Us, if submitted electronically. The initial Disability payment will be made within 35 days of receipt of satisfactory Proof of Claim by Us, if submitted in paper format.

**Legal Action:** The Covered Person may not bring suit to recover under this section until 60 days after he has given Us written proof of loss. No suit may be brought more than three years after the date of loss.

**Physical Examination and Autopsy:** We have the right to have a Physician of Our choice examine the Covered Person as often as necessary while the claim is pending. We may also have an autopsy made in case of death, unless not allowed by law. We will pay the cost of the exam and autopsy.

**Assignment:** Accidental Death and Dismemberment insurance provided by the Policy cannot be assigned.

 

# United HealthCare Insurance Company
## Notice of Privacy Policy and Practices

### Purpose of this Notice

United HealthCare Insurance Company respects the privacy of personal information and understands the importance of keeping this information confidential and secure. This Notice describes how we protect the confidentiality of the personal information we receive. Our practices apply to current and former members.

### Types of Personal Information We Collect

We collect a variety of personal information to administer a member's life or health coverage. Some of this information is provided by members in enrollment forms, surveys and correspondence (such as address, Social Security number, and dependent information). We also receive personal information (such as eligibility and claims information) through transactions with our affiliates and members, employers, insurance agents, other insurers, and health care providers. We retain this information after a member's coverage ends. We limit the collection of personal information to that which is necessary to administer our business, provide quality service and meet regulatory requirements.

### How We Protect Personal Information

We treat personal information securely and confidentially. We limit access to personal information to only those persons who need to know that information to provide our products or services to members (for example, our claims processors and care coordinators). These persons are trained on the importance of safeguarding this information and must comply with our procedures and applicable law. We meet strict physical, electronic and procedural security standards to protect personal information and maintain internal procedures to promote the integrity and accuracy of that information.

### Disclosure of Personal Information

We may share any of the personal information we collect (as described above) with our affiliates as permitted by law. We may also disclose this information to non-affiliated entities or individuals as permitted or required by law. Non-affiliates with whom we may disclose information as permitted by law include our attorneys, accountants and auditors, a member's authorized representative, health care providers, third party administrators, insurance agents and brokers, other insurers, consumer reporting agencies, and law enforcement or regulatory authorities. We may also disclose any of the personal information we collect (as described above) to companies that perform marketing services on our behalf or to other companies with whom we have joint marketing or disease management agreements. We do not disclose personal information to any other third parties without a member's request or authorization.

### Individual Rights to Access and Correct Personal Information

We have procedures to access the personal information we collect, and other than information we collect in connection with, or in anticipation of, a lawsuit or legal claim, we will make this information available to the member upon written request. Our goal is to keep our member information up-to-date and to correct inaccurate information. We have procedures in place to ensure the integrity of our information and for the timely correction of incorrect information. If you believe that any personal information we have about you is not accurate, please let us know by contacting our Compliance Officer at Unimerica Workplace Benefits, Mail Route MN010-W115, 6300 Olson Memorial Highway, Golden Valley, MN 55427.

### Further Information

We may amend our privacy policy from time to time. In accordance with applicable law, we will send our current customers a Notice describing our privacy policy and practices at least once a year. It will also be available upon request. This Notice is provided on behalf of the following United HealthCare Insurance Company affiliates:

 

For purposes of this Notice of Privacy Practices, "we" or "us" refers to the following UnitedHealthcare entities: All Savers Insurance Company; AmeriChoice of New Jersey, Inc.; AmeriChoice of New York, Inc.; AmeriChoice of Pennsylvania, Inc.; Arizona Physicians IPA, Inc.; Dental Benefit Providers of California, Inc.; Dental Benefit Providers of Illinois, Inc.; Dental Benefit Providers of Maryland, Inc.; Dental Benefit Providers of New Jersey, Inc.; Evercare of Arizona, Inc.; Evercare of Texas, L.L.C.; Fidelity Insurance Company; Golden Rule Insurance Company; Great Lakes Health Plan, Inc.; MAMSI Life and Health Insurance Company; MD-Individual Practice Association, Inc.; Midwest Security Life Insurance Company; Optimum Choice, Inc.; Optimum Choice of the Carolinas, Inc.; Rooney Life Insurance Company; Spectera, Inc.; Spectera Eyecare of North Carolina, Inc.; Spectera Vision, Inc.; Spectera Vision Services of California, Inc.; Unimerica Insurance Company; Unimerica Life Insurance Company; Unimerica Life Insurance Company of New York; United Behaviora l Health; United HealthCare of Alabama, Inc.; United HealthCare of Arizona, Inc.; United HealthCare of Arkansas, Inc.; United HealthCare of Colorado, Inc.; United HealthCare of Florida, Inc.; United HealthCare of Georgia, Inc.; UnitedHealthcare of Illinois, Inc.; United HealthCare of Kentucky, Ltd.; United HealthCare of Louisiana, Inc.; UnitedHealthcare of the Mid-Atlantic, Inc.; United HealthCare of the Midlands, Inc.; United HealthCare of the Midwest, Inc.; United HealthCare of Mississippi, Inc.; UnitedHealthcare of New England, Inc.; UnitedHealthcare of New Jersey, Inc.; UnitedHealthca re of New York, Inc.; UnitedHealthcare of North Carolina, Inc.; United HealthCare of Ohio, Inc.; United HealthCare of Tennessee, Inc.; United HealthCare of Texas, Inc.; United HealthCare of Utah; UnitedHealthcare of Wisconsin, Inc.; United HealthCare Insurance Company; United HealthCare Insurance Company of Illinois; United HealthCare Insurance Company of Ne w York; United HealthCare Insurance Company of Ohio; and U.S. Behavioral Health Plan, California.

## IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, MISSISSIPPI

ESTATE OF MICHAEL V. POWERS, DECEASED                    **PLAINTIFF**

V.                                          CIVIL ACTION NUMBER:  _16 CV028 (w)_

UNITED HEALTHCARE OF MISSISSIPPI, INC.,
UNITED HEALTHCARE SPECIALTY BENEFITS and
XYZ CORPORATIONS 1-10                                    **DEFENDANTS**

 COPY

THE STATE OF MISSISSIPPI

TO:   **UNITED HEALTHCARE SPECIALTY BENEFITS**
      **C/O REGISTERED AGENT FOR SERVICE OF PROCESS:**
      **C. T. CORPORATION SYSTEM**
      **645 LAKELAND EAST DRIVE, SUITE 101**
      **FLOWOOD, MISSISSIPPI 39232**

### S U M M O N S
#### NOTICE TO DEFENDANT
**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail or hand-deliver a copy of a written response to the Complaint to Grace W. Mitts, the attorney for the Plaintiff, whose post office address is P. O. Box 845, Meridian, Mississippi 39302-0845, and whose street address is 1100 23rd Avenue, Meridian, Mississippi 39302. Your response must be mailed or delivered within (30) days from the date of delivery of this summons and complaint or a judgment by default will be entered against you for the money or other things demanded in the complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, this ___3___ day of March, 2016.

DONNA JILL JOHNSON,
LAUDERDALE COUNTY, MISSISSIPPI CIRCUIT CLERK

BY: _____

atty took   (SEAL)

## IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, MISSISSIPPI

ESTATE OF MICHAEL V. POWERS, DECEASED                    **PLAINTIFF**

V.                                   CIVIL ACTION NUMBER: _16CV028(w)_

UNITED HEALTHCARE OF MISSISSIPPI, INC.,
UNITED HEALTHCARE SPECIALTY BENEFITS and
XYZ CORPORATIONS 1-10                                   **DEFENDANTS**



THE STATE OF MISSISSIPPI

TO:   UNITED HEALTHCARE OF MISSISSIPPI, INC.
      C/O REGISTERED AGENT FOR SERVICE OF PROCESS:
      C. T. CORPORATION SYSTEM
      645 LAKELAND EAST DRIVE, SUITE 101
      FLOWOOD, MISSISSIPPI 39232

### S U M M O N S
#### NOTICE TO DEFENDANT
**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND
YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail or hand-deliver a copy of a written response to the Complaint to

Grace W. Mitts, the attorney for the Plaintiff, whose post office address is P. O. Box 845, Meridian,

Mississippi 39302-0845, and whose street address is 1100 23rd Avenue, Meridian, Mississippi

39302. Your response must be mailed or delivered within (30) days from the date of delivery of this

summons and complaint or a judgment by default will be entered against you for the money or other

things demanded in the complaint.

You must also file the original of your response with the Clerk of this Court within a

reasonable time afterward.

Issued under my hand and the seal of said Court, this __3__ day of March, 2016.

DONNA JILL JOHNSON,
LAUDERDALE COUNTY, MISSISSIPPI CIRCUIT CLERK

BY: _____

( S E A L )

**IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, MISSISSIPPI**

FILED

2016 MAR -3   PM 3: 44

ESTATE OF MICHAEL V. POWERS, DECEASED                    **PLAINTIFF**

VS                                    CIVIL ACTION NO. _Jessie Johnson_ 16 CV028(W)

CIRCUIT CLERK

UNITED HEALTHCARE OF MISSISSIPPI, INC.,
UNITED HEALTHCARE SPECIALTY BENEFITS and
XYZ CORPORATIONS 1-10                                    **DEFENDANTS**

## INTERROGATORIES AND REQUESTS FOR PRODUCTION PROPOUNDED BY PLAINTIFF TO DEFENDANTS

Plaintiff, Estate of Michael V. Powers, deceased, propounds the following Interrogatories and

Requests For Production to defendants to be answered separately, in writing and under oath within

the time prescribed by the Mississippi Rules of Civil Procedure.

### INTERROGATORY AND REQUEST FOR PRODUCTION NO. 1

Please state the following as to the person or persons responding to these discovery requests:

      a.     Your complete name (and any aliases or other names under which you have

           been known at any time);

      b.     Your job title in relationship to one or both defendants;

      c.     Your address and telephone number.

### INTERROGATORY NO. 2

State the names, addresses, telephone numbers, and job title of all persons who were involved

in the consideration and denial of the plaintiff's claim for Accidental Death And Dismemberment

benefits arising out of his accident of March 6, 2013.

### INTERROGATORY NO. 3

State the names, addresses and telephone numbers of all persons who have knowledge of any

of the matters and things alleged in plaintiff's Complaint, including all allegations pertaining to any

contact or communications plaintiff's decedent may had with any of the defendants or defendants'

agents, employees, officers or representative, any allegations pertaining to the subject policy of

insurance, and any allegations pertaining to the claim which is the subject of the Complaint.

### INTERROGATORY NO. 4

State the names and addresses of each expert witness, including but not limited to, medical

doctors, whom you intend to call as a witness at the trial of this case.

### INTERROGATORY NO. 5

With regard to each of the foregoing expert witnesses named in answer to Interrogatory number 4:

    (a)    State the subject matter on which each such expert is expected to testify;

    (b)    The substance of the facts and opinions to which each of the foregoing experts is expected to testify; and,

    (c)    A summary of the grounds for each such opinion of each such expert.

### INTERROGATORY NO. 6

State the names and addresses of each individual, including but not limited to any expert, upon whose opinion and/or testimony the denial of plaintiff's claim for Accidental Death And Dismemberment benefits was based.

### INTERROGATORY NO. 7 AND REQUEST FOR PRODUCTION

Are you, your attorneys, or anyone acting on your behalf, aware of the existence of any oral, written, or recorded statement made by or for any party or witness? If so, state:

    (a)    The name of each person making the statement;

    (b)    The date of the statement;

    (c)    The name, employer, occupation and last known address of the person or persons taking the statement; and,

    (d)    The name and last known address of the person now in possession of the original statement or a copy of it.

BY WAY OF REQUEST FOR PRODUCTION, please produce for inspection and copying a true and correct copy of any statement in your possession or control.

### INTERROGATORY NO. 8 AND REQUEST FOR PRODUCTION

Was an investigation conducted concerning the claim which is the subject of the Complaint? If so, state:

    (a)    The name, address and occupation of the person who conducted each investigation;

    (b)    The name and address of the person who requested each investigation to be made;

(c)     The date on which each investigation was conducted;

(d)     The place where each investigation was performed; and,

(e)     The name and address of the person now having custody of each written report made
        concerning each investigation.

BY WAY OF REQUEST FOR PRODUCTION, please produce a complete copy of the file

containing your investigation of the claim which is the subject of the Complaint.

This the _3rd_ day of _March_, 2016.

Respectfully submitted,

Respectfully submitted,

**ESTATE OF MICHAEL V. POWERS, DECEASED**

**F.W. MITTS, III, EXECUTOR, MSB #3389**
Martin, Rogers & Mitts
P.O. Box 5247
Meridian, MS 39302
Telephone: 601-693-6516
Facsimile: 601-483-3615
Email: bmitts01@bellsouth.net

Prepared by:

Grace W. Mitts          MSB #3390
Witherspoon & Compton, LLC
P.O. Box 845
Meridian, MS 39302
Telephone: 601-693-6466
Facsimile: 601-693-4840
Email: gmitts@witherspooncompton.com

OF COUNSEL FOR PLAINTIFF

O:\GJCFILES\GWM\15922\Claim against UHC\Interrogatories And Requests For Production to Defendants.wpd

FILED

**IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, MISSISSIPPI**

**ESTATE OF MICHAEL V. POWERS, DECEASED** 2016 MAR -3 PH 3: 44 **PLAINTIFF**

**VS** CIVIL ACTION NUMBER:  16 CV 028 (ω)

CIRCUIT CLERK

**UNITED HEALTHCARE OF MISSISSIPPI, INC.,**
**UNITED HEALTHCARE SPECIALTY BENEFITS and**
**XYZ CORPORATIONS 1-10** **DEFENDANT**

---

### REQUESTS FOR ADMISSIONS

Comes now, plaintiff, the Estate of Michael V. Powers, by F.W. Mitts, III, Executor, and pursuant to Rule 36 of the Mississippi Rules of Civil Procedure propounds the following Requests for Admissions to be answered in the time permitted by the Rules:

### REQUEST NO. 1

Admit that United Healthcare of Mississippi, Inc, issued policy number ■0483 to Peavey Electronics Corporation with an effective date of July 1, 2005.

### REQUEST NO. 2

Admit the copy of the policy attached to the Complaint as Exhibit "1" is a true and correct copy of policy number ■0483 issued by United Healthcare of Mississippi, Inc. to Peavey Electronics Corporation with an effective date of July 1, 2005.

### REQUEST NO. 3

Admit that the policy numbered ■0483 attached to the Complaint herein was in full force and effect on March 6, 2013.

### REQUEST NO. 4

Admit that Michael V. Powers was a Covered Person as defined by policy number ■0483 issued by United Healthcare of Mississippi, Inc. to Peavey Electronics Corporation, effective date

of July 1, 2005.

### REQUEST NO. 5

Admit that on March 6, 2013, Michael V. Powers was a Covered Person under policy number ▇0483 issued by United Healthcare of Mississippi, Inc. to Peavey Electronics Corporation with an effective date of July 1, 2005.

### REQUEST NO. 6

Admit that Michael V. Powers, through his representative, presented a claim for accidental death and dismemberment benefits to United Healthcare of Mississippi, Inc. through its agent or representative, United Healthcare Specialty Benefits, for benefits as a result of the March 6, 2013 injury to his right eye.

### REQUEST NO. 7

Admit that the policy of insurance numbered ▇0483 issued by United Healthcare of Mississippi, Inc. to Peavey Electronics Corporation provided accidental death and dismemberment benefits to Covered Persons of 50% of the amount of insurance shown on its schedule of benefits for the loss of sight of one eye.

### REQUEST NO. 8

Admit that the claim presented on behalf of Michael V. Powers for the injuries to his right eye sustained on March 6, 2013 was denied by United Healthcare.

### REQUEST NO. 9

Admit that Michael V. Powers, through his representative, exhausted all administrative appeals processes afforded for the claim for injuries received on March 6, 2013.

### REQUEST NO. 10

Admit that the May 23, 2014 letter of Mary Knutson of United Healthcare Specialty Benefits

attached hereto as **EXHIBIT "A"** is a true and correct copy of your denial of the claim made on

behalf of Michael V. Powers for injuries sustained on March 6, 2013.

## REQUEST NO. 11

Admit that the lab report attached hereto as **EXHIBIT "B"** is a true and correct copy of the

lab report of Drug Test administered to Michael V. Powers on the date of his injury, March 6, 2013.

## REQUEST NO. 11

Admit that the denial of benefits for Michael V. Powers' claim for accidental death and

dismemberment benefits related to his March 6, 2013 to his right eye was based all or in part upon

the lab report attached hereto as Exhibit "B".

## REQUEST NO. 12

Admit the lab report attached as Exhibit "B" states on its first page that Michael V. Powers

"passed" the drug test.

## REQUEST NO. 13

Admit that the lab report attached as Exhibit "B" contains handwriting stating "Had valid

prescription for Alpha-Hydroxyaprazolam".

## REQUEST NO. 14

Admit that policy states on page 17 as follows:

"Limitations: We will not pay a benefit for a loss caused directly or indirectly by:

5. Use of any drug, hallucinogen, controlled substance, or narcotic unless prescribed by a

physician."

## REQUEST NO. 15

Admit you have no facts, documents, or witnesses to dispute Michael V. Powers had a valid

prescription of Alpha-Hydroxyaprazolam on March 6, 2013.

## REQUEST NO. 16

Admit Alpha-Hudroxyaprazolam is a triazolobenzodiazepine compound.

## REQUEST NO. 17

Admit you have no knowledge of any witnesses to the accident of March 6, 2013.

This the 3rd day of March, 2016.

Respectfully submitted,

Respectfully submitted,

**ESTATE OF MICHAEL V. POWERS, DECEASED**

**F.W. MITTS, III, EXECUTOR, MSB #3389**
Martin, Rogers & Mitts
P.O. Box 5247
Meridian, MS 39302
Telephone: 601-693-6516
Facsimile: 601-483-3615
Email: bmitts01@bellsouth.net

Prepared by:

Grace W. Mitts          MSB #3390
Witherspoon  & Compton, LLC
P.O. Box 845
Meridian, MS 39302
Telephone: 601-693-6466
Facsimile: 601-693-4840
Email: gmitts@witherspooncompton.com

OF COUNSEL FOR PLAINTIFF

O:\GJCFILES\GWM\15922\Claim against UHC\Requests For Admissions.wpd



PO Box 7466, Portland, ME 04112-7466
Tel (888)299-2070  Fax (888)505-8550

May 23, 2014

MARTIN ROGERS & MITTS LLP
FW MITTS
PO BOX 5427
1000-19th AVENUE
MERIDAN MS 39302

| | |
|---|---|
| Re: | Michael Powers' Group Accidental Dismemberment Claim |
| Claim Number: | REDACTED3739 |
| Policyholder: | Peavey Electronics Corporation |
| Policy Number: | REDACTED0483 |
| Insuring Entity: | UnitedHealthcare Insurance Company |

Dear Mr. Mitts:

We have completed the appeal review of the claim referenced above and have concluded the decision to deny the Group Accidental Dismemberment claim was appropriate and in accordance with the provisions of the policy.

The policy states, in relevant part:

### ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT FOR COVERED PERSON

If the Covered Person suffers a loss described below, We will pay the amount of insurance that applies. The Covered Person, or the Covered Person's beneficiary, must give Us proof that:

1. Injury occurred while the insurance was in force under this section;

2. the Sickness began while the Covered Person was insured under the Policy;

3. loss occurred within 90 days after the Injury; and

4. loss was due to Injury independent of all other causes.

The policy defines Loss of sight as: "Loss of sight means total and irrecoverable loss of sight."

The policy further states, in relevant part:

EXHIBIT "A"
Page 1 of 4



PO Box 7466, Portland, ME 04112-7466
Tel (888)299-2070 Fax (888)505-8550

**Limitations:** We will not pay a benefit for a loss caused directly or indirectly by:

...

5. use of any drug, hallucinogen, controlled substance, or narcotic unless prescribed by a Physician;

We received the claim for Mr. Powers' Group Accidental Dismemberment benefits on April 18, 2013. Mr. Powers reported that the accident occurred on March 6, 2013, while he was at work. He stated "guitar hit eye while buffing." The Attending Physician Statement completed by Dr. Goodman stated the injuries were severe corneoscleral laceration right eye, right orbital bone fracture and facial contusions.

On April 30, 2014, we were notified that Mr. Powers died on April 29, 2013, due to cardiopulmonary arrest.  His Group Life Insurance claim was approved on June 7, 2013.

As you are aware, on September 25, 2013, Mr. Powers' Group Accidental Dismemberment claim was denied as we did not have the relevant information to complete our review to determine his eligibility for Accidental Dismemberment benefits.  Specifically, we did not have medical records to support that his loss of sight was total and irrecoverable which is required under the terms of the policy.  In addition, the policy requires that the loss must be due to an Injury, independent of all other causes.  We had requested, but had not received the workers' compensation information to consider in our review.  We were aware that his workers' compensation claim had been denied. Please refer to the letter dated September 25, 2013, for specific details.

We received your request for an appeal review on November 21, 2013.  You asked for sufficient time to provide medical records.  We wrote to you on January 17, 2014, and provided you with an extension of 30 days (to February 20, 2014), to provide us with Mr. Powers' medical records and workers' compensation information.

You provided us with medical records from Rush Foundation Hospital and Meridian Ophthalmic Associates on February 14, 2014.  You also provided us with workers' compensation information. You advised that his medical records from Anderson Regional Medical Center and Dr. Michael Bourne were still outstanding.  We agreed to an appeal extension of 30 days (to March 22, 2014) for you to provide the outstanding medical records.

On March 17, 2014, we received the medical records from Anderson Regional Medical Center and Dr. Michael Bourne.  We wrote to you on March 18, 2014 and advised we would now begin the appeal review.  As part of the appeal review, Mr. Powers' claim file was referred for an independent medical review.

On March 26, 2014, we received a copy of the Drug Test Report that was performed at Rush Workforce Wellness.  This information was considered in the independent medical review.

**EXHIBIT "A"**
**Page 2 of 4**

We wrote to you on April 15, 2014 and advised that based on a review of the information in Mr. Powers' claim file, it did not support that Mr. Powers' loss was due to an Injury, independent of all other causes. The independent medical review completed by Dr. John LoCascio, who is Board Certified in Internal Medicine, noted that the level of alphahydroxyalprazolam was extremely high and would be inconsistent with talking the medication as directed. Dr. LoCascio noted the most common adverse side effects of this medication were drowsiness, light-headedness, depression, headache, confusion, insomnia, nervousness and syncope.

As you stated in our telephone conversation on April 11, 2014, that you did not have a copy of the Drug Test Report, I agreed to provide you with a copy of the report which I included in my letter dated April 15, 2014. I advised that we would allow you 30 days to provide us with any additional information you wanted us to consider in the appeal review, and if we did not receive any additional information by May 15, 2014, we would complete the appeal decision with the information in the claim file to date.

We have not received any additional information from you. Therefore, we conclude that the Group Accidental Dismemberment claim is not payable. Mr. Powers' loss was not due to an Injury independent of all other causes.

As a result, we have made the decision to uphold the denial of his Group Accidental Dismemberment claim.

We regret that we cannot provide the outcome that you requested, however, we must adhere to the policy provisions in adjudication of the claim and are unable to provide a benefit that is in conflict with the stated terms of the policy.

You are entitled to receive, upon request and without charge, reasonable access to copies of all documents, records or other information that are relevant to the benefit determination.

If you dispute the determination, you have a right to bring a civil suit under section 502(a) of the Employee Retirement Income Security Act of 1974.

If you have any questions, please feel free to contact me at 1 (888) 299-2070.

Sincerely,

*Mary Knutsen*

Mary Knutsen, ALHC
Best Practice Consultant

UnitedHealthcare®

PO Box 7466, Portland, ME 04112-7466

3990152090C



U.S. POSTAGE ⟩⟩ PITNEY BOWES

ZIP 04106
02 1W
0001384528MAY 23 2014
$ 000.48°

EXHIBIT "A"
Page 4 of 4

03/18/2013   10:05   601-703-4416          WORK FORCE WELLNESS          PAGE  02/04



**WORK
FORCe
WELLNESS**
Rush FOUNDATION HOSPITAL

# Non-DOT DRUG SCREEN REPORT

Name: _Michael Famero_

SSN: _REDACTED 0203_

Date Done: _3/06/13_

PASS _X_        FAIL _____

SIGNED (Person completing form):
_Wanda B. Mays_        Date: _3/08/13_

**Terry Redmond, CFNP – Clinic Director**

1314 19TH AVE., MERIDIAN, MS 39301  •  PHONE: 601-703-4416 OR 4417  •  FAX: 601-703-4416

EXHIBIT "B"
Page 1 of 3



13M64C487680

**Drug Test Report**

DG
1111 Newton Street
Gretna, LA 70053
(800) 433-3823 • (504) 361-8880
FAX: (504) 361-8296

RUSH WORK FORCE WELLNESS
TERRY REDMOND
1314 19TH AVE.
MERIDIAN, MS 39301-0000

Facility Phone: (601) 703-4415    Fax: (601) 703-4418

| | |
|---|---|
| Account Number: | 114401 |
| Facility Number: | 181387 |
| Lab Number: | 32708608 |
| Specimen ID Number: | 38366100 |
| Specimen Type: | |

SCANNED
MAR 27 2013
CCMS

Collection Site Number: 14429
Collection Site Name: RUSH WORKFORCE WELLNESS
Collection Site Address: 1314 19TH AVE
Collection Site City, State Zip: MERIDIAN, MS 39301
Collection Site Phone: 601-703-4415
Collection Site Fax: 601-703-4418

Donor Name/ID: POWERS, MICHAEL
Donor SSN/ID: REDACTED-0203
Reason For Drug Test: POST ACCIDENT

Date Collected: 3/6/2013
Date Received: 3/7/2013
Date Reported: 3/14/2013

Panel Number: 75    Panel Description: **7 DRUG BE150/AMPH500 + MDMA & 6AM**

Confirmation Method: GC/MS and/or LC-MS/MS

The following drugs and/or drug classes were tested at the indicated threshold (cut-off) levels:

| Description | Screening Level | Confirmation Level | Result |
|---|---|---|---|
| 6-ACETYLMORPHINE | 10.0 NG/ML | 10.0 NG/ML | NEGATIVE |
| AMPHETAMINES | 500 ng/ml | 250 ng/ml | NEGATIVE |
| BARBITURATES | 300 ng/ml | 300 ng/ml | NEGATIVE |
| BENZODIAZEPINES | 300 ng/ml | 300 ng/ml | POSITIVE |
| BENZOYLECGONINE-COCAINE METAB | 150 ng/ml | 100 ng/ml | NEGATIVE |
| MARIJUANA METABOLITE | 50 ng/ml | 15 ng/ml | NEGATIVE |
| METHYLENEDIOXYMETHAMPHETAMINE | 500 ng/ml | 250 ng/ml | NEGATIVE |
| OPIATES | 2000 ng/ml | 2000 ng/ml | NEGATIVE |
| PHENCYCLIDINE | 25 ng/ml | 25 ng/ml | NEGATIVE |

*Had valid prescription for alpha-Hydroxyaprazelam*

LINDSAY ADKINS - CERTIFYING TECHNICIAN/SCIENTIST

EXHIBIT "B"
Page 2 of 3

Alere Toxicology S  (504) 361-8298      Page 2 of 3        Tue Mar 19 2013 01:11:19 PM CDT



**Drug Test Report**

1111 Newton Street
Gretna, LA 70053
(800) 433-3823 · (504) 361-8089
FAX: (504) 361-8298

| | |
|---|---|
| RUSH WORK FORCE WELLNESS | Account Number:     114401 |
| TERRY REDMOND | Facility Number:     181387 |
| 1314 19TH AVE. | Lab Number:     32708608 |
| MERIDIAN, MS 39301-0000 | Specimen ID Number:     38386100 |
| | Specimen Type: |

Facility Phone: (601) 703-4415      Fax: (601) 703-4418

Collection Site Number: 14429
Collection Site Name: RUSH WORKFORCE WELLNESS
Collection Site Address: 1314 19TH AVE
Collection Site City, State Zip: MERIDIAN, MS 39301
Collection Site Phone: 601-703-4415
Collection Site Fax: 601-703-4418

Donor Name/ID: POWERS, MICHAEL
REDACTED                    -0203
Reason For Drug Test: POST ACCIDENT

Date Collected:     3/6/2013
Date Received:     3/7/2013
Date Reported:     3/14/2013

Panel Number: 75         Panel Description: **7 DRUG BE150/AMPH500 + MDMA & 6AM**

| Drug Test Result | Lab/Remark | Quantitative Value |
|---|---|---|
| POSITIVE | ALPHA-HYDROXY ALPRAZOLAM | 200 ng/ml |

Confirmation Method:   GC/MS and/or LC-MS/MS

The following drugs and/or drug classes were tested at the indicated threshold (cut-off) levels:

| Description | Screening Level | Confirmation Level | Result |
|---|---|---|---|
| 6-ACETYLMORPHINE | 10.0 NG/ML | 10.0 NG/ML | NEGATIVE |
| AMPHETAMINES | 500 ng/ml | 250 ng/ml | NEGATIVE |
| BARBITURATES | 300 ng/ml | 300 ng/ml | NEGATIVE |
| BENZODIAZEPINES | 300 ng/ml | 300 ng/ml | POSITIVE |
| BENZOYLECGONINE-COCAINE METAB | 150 ng/ml | 100 ng/ml | NEGATIVE |
| MARIJUANA METABOLITE | 50 ng/ml | 15 ng/ml | NEGATIVE |
| METHYLENEDIOXYMETHAMPHETAMINE | 500 ng/ml | 250 ng/ml | NEGATIVE |
| OPIATES | 2000 ng/ml | 2000 ng/ml | NEGATIVE |
| PHENCYCLIDINE | 25 ng/ml | 25 ng/ml | NEGATIVE |

LINDSAY ADKINS - CERTIFYING TECHNICIAN/SCIENTIST

EXHIBIT "B"
Page 3 of 3

## IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, MISSISSIPPI

ESTATE OF MICHAEL V. POWERS, DECEASED       **PLAINTIFF**

**V.**      CIVIL ACTION NUMBER: _16 CV 028(w)_

UNITED HEALTHCARE OF MISSISSIPPI, INC.,
UNITED HEALTHCARE SPECIALTY BENEFITS and
XYZ CORPORATIONS 1-10       **DEFENDANTS**

THE STATE OF MISSISSIPPI     🔲 COPY

**TO:**    UNITED HEALTHCARE SPECIALTY BENEFITS
      C/O REGISTERED AGENT FOR SERVICE OF PROCESS:
      C. T. CORPORATION SYSTEM
      645 LAKELAND EAST DRIVE, SUITE 101
      FLOWOOD, MISSISSIPPI 39232

### SUMMONS
#### NOTICE TO DEFENDANT

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail or hand-deliver a copy of a written response to the Complaint to

Grace W. Mitts, the attorney for the Plaintiff, whose post office address is P. O. Box 845, Meridian,

Mississippi 39302-0845, and whose street address is 1100 23rd Avenue, Meridian, Mississippi

39302. Your response must be mailed or delivered within (30) days from the date of delivery of this

summons and complaint or a judgment by default will be entered against you for the money or other

things demanded in the complaint.

You must also file the original of your response with the Clerk of this Court within a

reasonable time afterward.

Issued under my hand and the seal of said Court, this **1 0** day of March, 2016.

     DONNA JILL JOHNSON,
     LAUDERDALE COUNTY, MISSISSIPPI CIRCUIT CLERK

     BY: _Renee R Covert_

     (SEAL)

*atty took process*

IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, MISSISSIPPI

ESTATE OF MICHAEL V. POWERS, DECEASED                    PLAINTIFF

VS.                                    CIVIL ACTION NO. 2016-CV-028 (W)

UNITED HEALTHCARE OF MISSISSIPPI, INC.,
UNITED HEALTHCARE SPECIALTY BENEFITS and
XYZ CORPORATIONS 1-10                                    DEFENDANTS

### NOTICE OF FILING OF REMOVAL

TO:   Donna Jill Johnson, Circuit Clerk
      LAUDERDALE COUNTY CIRCUIT COURT
      P.O. Box 1005
      Meridian, MS 39302

On March 29, 2016, the Defendants removed this action to the United States District Court for the Southern District of Mississippi by filing a Notice of Removal with that court. A copy of the Notice of Removal is attached as Exhibit 1.

The Circuit Court of Lauderdale County, Mississippi is respectfully requested to proceed no further in this action unless the action is remanded by order of the United States District Court for the Southern District of Mississippi.

Dated:  March 29, 2016.

                              Respectfully submitted,

                              UNITED HEALTHCARE OF MISSISSIPPI, INC.,
                              UNITED HEALTHCARE SPECIALTY BENEFITS

                              By its attorneys,

                              BAKER, DONELSON, BEARMAN, CALDWELL
                              & BERKOWITZ, PC

                              By: _____
                                   Adam H. Gates

EXHIBIT
3

Of Counsel:

Adam H. Gates (MSB No. 102305)
BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.
One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi 39211
Telephone:    (601) 351-2400
Facsimile:     (601) 351-2424

## CERTIFICATE OF SERVICE

I certify that I have filed this document with the Clerk of the Court via U.S. Mail, and

that a true and correct copy was served through U.S. Mail, postage prepaid, on the following:

Grace W. Mitts
Witherspoon & Compton, LLC
P.O. Box 845
Meridian, MS 39302

Dated:  March 29, 2016.

Adam H. Gates

2